NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JASON D. RAY,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-12135<br>Trial Court No. 3KO-13-00627 CR<br><br>O P I N I O N<br><br>No. 2660 — October 17, 2019 |

Appeal from the Superior Court, Third Judicial District, Kodiak, Steve Cole, Judge.

Appearances: Amanda Harber, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Stephen B. Wallace, District Attorney, Kodiak, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER, writing for the Court on all issues except the proper interpretation of AS 12.55.090(f), and certifying this last issue to the Alaska Supreme Court.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Judge MANNHEIMER, Judge SUDDOCK, and Judge ALLARD, each writing separately on the proper interpretation of AS 12.55.090(f).

In December 2013, pursuant to a plea agreement, Jason D. Ray pleaded guilty to theft in the second degree. The plea agreement called for Ray to receive a sentence of 24 months' imprisonment with 20 months suspended (4 months to serve), followed by 3 years of probation. Ray served his 4 months, and he was released on probation.

In the summer of 2014, Ray admitted that he had violated two of his conditions of probation, and he was adjudicated to have violated two others. Then, at his probation revocation disposition hearing, Ray announced that he wished to reject further probation.

In *Brown v. State*, the Alaska Supreme Court construed Alaska's probation statutes as giving criminal defendants the right to refuse probation at their initial sentencing, or to later refuse continued probation. [1]

Under *Brown*, when a defendant who has been on probation decides to reject further probation, the sentencing court must then give the defendant a "flat-time" sentence by imposing some or all of the defendant's remaining suspended jail time and terminating the defendant's probation. [2] The sentencing judge must not automatically impose all of the defendant's remaining suspended jail time, but rather must evaluate all the circumstances of the defendant's case and impose an appropriate sentence under the

---

[1] *Brown v. State*, 559 P.2d 107, 111 n. 13 (Alaska 1977).

[2] *See Bland v. State*, 846 P.2d 815, 818–19 (Alaska App. 1993).

sentencing criteria established by the supreme court in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), and now codified in AS 12.55.005.[3]

But in Ray's case, the superior court refused to honor Ray's decision to reject further probation. Instead, the court imposed a sentence which continued to include suspended jail time, and which still left Ray on probation. In fact, the sentencing judge extended Ray's term of probation — from 3 years to 5 years.

The judge sentenced Ray to serve 16 months, which was all but 90 days of Ray's suspended jail time. The judge then placed Ray on unsupervised probation for 5 years after he completed serving the 16 months in jail. The only condition of this unsupervised probation was that Ray obey the law.

(The judge's apparent purpose for keeping Ray on unsupervised probation was to allow the court to impose a more severe sentence if Ray committed another felony before his 5 years of probation expired. Under AS 12.55.155(c)(20), if a person commits a felony while they are on felony probation, this fact allows the sentencing court to increase their sentence above the applicable presumptive sentencing range.)

In this appeal, Ray challenges the superior court's action on two grounds.

First, Ray contends that the superior court committed error when the court ruled against him on the two contested violations of probation. Ray argues that the evidence presented at his revocation hearing was insufficient to support the superior court's findings that Ray committed the two contested violations of probation.

Second, Ray contends that the superior court acted illegally when the court kept Ray on probation after Ray declared that he wished to reject further probation.

---

[3] *DeMario v. State*, 933 P.2d 558, 562 (Alaska App. 1997); *Bland v. State*, 846 P.2d 815, 818–19 (Alaska App. 1993).

We conclude that the evidence was sufficient to support the judge's findings that Ray violated the two conditions of probation. We further reject Ray's contention that he had a *constitutional* right to reject further probation.

But with regard to whether Ray had a *statutory* right to reject probation, this Court is unable to reach a majority decision — because no two of us are able to agree on the proper interpretation of a probation statute, AS 12.55.090(f). We therefore certify this issue of statutory interpretation to the Alaska Supreme Court. *See* AS 22.05.015(b).

*Background facts*

Jason Ray lived in Kodiak. In early July 2014, Ray's probation officer, Jill Bunting, issued him a travel permit that allowed Ray to go to Anchorage and reside at the Brother Francis Shelter for one week while he looked for work.

In mid-July 2014, Probation Officer Bunting asked the superior court to revoke Ray's probation, alleging that Ray had violated several conditions of his probation. Of these various allegations, two are germane to this appeal: the allegation that Ray left the Brother Francis Shelter and went to stay elsewhere without obtaining the written permission of his probation officer, and the allegation that Ray consumed alcohol to excess while he was in Anchorage.

Officer Bunting was the only witness at Ray's adjudication hearing. Bunting testified that Ray violated the conditions of his travel pass by not staying at the Brother Francis Shelter while he was in Anchorage seeking work. According to Bunting, shortly after Ray arrived in Anchorage, Ray left several voice messages for her. In these voice messages, Ray told Bunting that he would be staying at the Ted Stevens International Airport because he did not want to stay at the Brother Francis Shelter.

Bunting also testified that she received a report from the Anchorage Police Department that the police had responded to a fight in which Ray was purportedly involved. The police administered a portable breath test to Ray, and the breath-testing device registered a blood alcohol level of .121 percent.

At the revocation hearing, Ray's attorney argued that Ray had not violated the condition of probation requiring him to notify his probation officer of changes of residence, because the Brother Francis Shelter had not been Ray's "residence". The defense attorney contended that the term "residence" implied more permanence than a short-term lodging.

With regard to the allegation of intoxication, Ray's attorney raised a hearsay objection to Bunting's testimony about the reading of the portable breath test device, since Bunting had no personal knowledge of that reading, and she was only relaying what she had been told by the Anchorage police. The judge overruled this objection, since the hearsay rules do not apply at probation revocation hearings. *See* Alaska Evidence Rule 101(c)(2).

Later, during the defense attorney's summation to the judge, the attorney argued that the judge should place little or no weight on the portable breath test reading, because portable breath-testing devices had not been shown to meet the standard for the admission of scientific evidence established in *Daubert v. Merrell Dow Pharmaceuticals* and *State v. Coon*.[4] The defense attorney further argued that, without the result of the portable breath test, the State's evidence was insufficient to prove that Ray was intoxicated when he was contacted by the police.

---

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *State v. Coon*, 974 P.2d 386 (Alaska 1999).

The judge concluded that Ray had violated both of the conditions of his probation (as well as other conditions of probation that are not at issue in this appeal).

Then, at Ray's disposition hearing, Ray elected to reject further probation. At that time, Ray had 19 months of suspended jail time remaining on his sentence (less the time he had spent in jail awaiting the resolution of the petition to revoke probation).

Probation Officer Bunting asked the court to impose all of Ray's remaining suspended sentence, and to end his probation. She declared that she did not think anything could be achieved by returning Ray to probation.

Notwithstanding Ray's rejection of probation, and notwithstanding the probation officer's endorsement of Ray's request for an end to his probation, the judge decided to keep Ray on probation for 5 years after he finished serving his active term of imprisonment. More specifically, the judge sentenced Ray to 19 months in jail with 3 months suspended, with probation for 5 years after he got out of jail. However, the judge amended Ray's conditions of probation to make the probation unsupervised, with the sole condition that Ray obey all laws.

(Although the judge did not explain his decision, the judge was apparently influenced by the prosecutor's argument that Ray should be kept on probation so that, if he committed another felony in the future, his crime would be aggravated under AS 12.55.155(c)(20), which applies when a defendant commits a felony while on furlough, parole, or probation from a prior felony conviction.)

*Why we conclude that the judge properly found that Ray violated his conditions of probation*

On appeal, Ray renews his claim that neither the Brother Francis Shelter nor the Anchorage Airport constituted his "residence", because these were only short-

term lodgings. Ray asserts that, despite his travel to Anchorage, his residence continued to be the City of Kodiak (more specifically, the "streets of Kodiak", because Ray was apparently homeless). Ray also argues that, regardless of where his "residence" was, the real point of the probation condition was to make sure that his probation officer knew where he was — and Ray points out that he told his probation officer that he intended to stay at the airport.

But the superior court concluded that, despite whatever technical meanings the term "residence" might have, the intent of the probation condition was both (1) to make sure that Bunting knew where Ray was, and (2) to make sure that Ray stayed in the agreed-upon place (*i.e.*, the shelter) unless he had Bunting's permission to live elsewhere. The court further found that Ray knew what the probation condition required.

This was a reasonable interpretation of the probation condition, and a reasonable conclusion regarding Ray's state of knowledge. We therefore uphold the superior court's ruling.[5]

With regard to the finding that Ray was intoxicated in Anchorage, Ray claims that the court should not have relied on the result obtained on the portable breath test device (the "PBT"), because these devices have not been shown to meet the standard for the admission of scientific evidence, and because the prosecutor made no attempt to

---

[5] *See Joubert v. State*, 926 P.2d 1191, 1193 (Alaska App. 1996) (holding that, because the conditions of probation can be "likened to a contract between the court and the defendant", a court must construe the meaning of a probation condition by "examin[ing] how a reasonable person in [the defendant's] place would have understood it, taking into consideration the language of the disputed provision ... and the case law interpreting similar provisions").

lay an evidentiary foundation for this testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, and *Daubert's* Alaska counterpart, *State v. Coon*.[6]

But as we have explained, when Bunting offered testimony concerning the PBT reading, the only objection that Ray's attorney raised was a hearsay objection. This objection had no merit: Alaska Evidence Rule 101(c)(2) states that, apart from the rules pertaining to evidentiary privilege, the rules of evidence do not apply to probation proceedings.

It was only later, during summation, that the defense attorney shifted her argument — no longer pressing her original assertion that Bunting's testimony on this point was inadmissible hearsay, but instead asserting that, even if this testimony was admissible, little or no weight should be given to the PBT reading because the State had not laid a *Daubert* foundation for the PBT device.

We note that the defense attorney did not frame her *Daubert* argument as a late objection to the *admission* of Bunting's testimony. Rather, the defense attorney argued only that the testimony should be given little or no weight.

Moreover, because the rules of evidence do not apply to probation revocation hearings, it is unclear whether Ray's attorney could properly object to the PBT evidence under *Daubert* and *Coon*. Both *Daubert* and *Coon* are based on interpretations of Evidence Rule 702: *Daubert* established the foundational requirement for introducing scientific evidence under Federal Evidence Rule 702, and *Coon* adopted the *Daubert* test as the foundational requirement for introducing scientific evidence under Alaska Evidence Rule 702. But Alaska Evidence Rule 101(c)(2) declares that the rules of evidence (other than the rules of privilege) do not apply to probation revocation

---

[6] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *State v. Coon*, 974 P.2d 386 (Alaska 1999).

proceedings. It is therefore uncertain whether Ray's attorney could properly object to the PBT results under *Daubert* and *Coon*.

Even assuming that a *Daubert-Coon* objection would have been proper, Ray's attorney did not make a contemporaneous *Daubert-Coon* objection to the *admission* of the probation officer's testimony about the PBT result. Ray thus failed to preserve this issue for appeal. [7] And Ray does not argue that the judge committed plain error by failing to hold a *Daubert* hearing *sua sponte*.

In any event, as the judge noted, the PBT result in Ray's case (.12 percent) was substantially higher than the .08 percent threshold for DUI. Thus, even if the PBT reading was only an approximation of Ray's blood alcohol level, the PBT reading was sufficient to support a finding that Ray had consumed alcohol to excess.

For these reasons, we find no plain error.

*Introduction to the question of whether the superior court was authorized to subject Ray to further probation after Ray expressly rejected further probation*

As we explained in the introductory section of this opinion, the Alaska Supreme Court held in *Brown v. State* that, under Alaska's probation statutes, a defendant has the right to reject probation and demand a "flat-time" sentence — *i.e.*, a

---

[7] *See Mascenti v. Becker*, 237 F.3d 1223, 1230–31 (10th Cir. 2001) (holding that a party failed to preserve an objection to expert testimony when the party failed to object to the testimony until after the close of the evidence); *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1192 (11th Cir. 1995) (same); *Marbled Murrelet v. Babbit*, 83 F.3d 1060, 1066–67 (9th Cir. 1996) (holding that the failure to raise a *Daubert* objection to expert testimony waives the issue on appeal); *Clay v. Commonwealth*, 291 S.W.3d 210 (Ky. 2008) (holding that a litigant who fails to request a *Daubert* hearing fails to preserve the issue for appeal).

sentence consisting solely of active imprisonment, with no suspended jail time and no probation. [8]

When Ray's defense attorney announced at the disposition hearing that Ray had decided to reject further probation, the sentencing judge responded, "That certainly changes things." The judge then questioned Ray about his understanding of the consequences of his choice, and about the voluntariness of Ray's decision. After completing this inquiry, and without objection from the prosecutor, the judge accepted Ray's decision to reject further probation.

Nevertheless, as we have explained, the judge did not terminate Ray's probation. Instead, the judge sentenced Ray to serve 5 years on unsupervised probation after Ray completed a sentence of 16 months in prison (leaving Ray with a further 3 months of suspended jail time).

On appeal, Ray argues that, because he expressly rejected further probation, the superior court was barred from imposing a sentence that included more probation. More specifically, Ray argues that criminal defendants have a constitutional right to reject probation — and thus, when Ray made his choice to refuse further probation, the judge was required to simply impose some or all of Ray's remaining suspended jail time, and to release him from further probation supervision.

The State, for its part, contends that a 2012 amendment to Alaska's probation statutes, AS 12.55.090(f), prohibits a defendant from rejecting further probation if the defendant was initially sentenced under a plea bargain that called for a specific term of probation. As we have explained, Ray's plea agreement stated that he would receive a 3-year term of probation. The State therefore argues that Ray had no right to request an early end to his probation.

---

[8] *Brown v. State*, 559 P.2d 107, 111 n. 13 (Alaska 1977).

As we are about to explain, we reject Ray's argument that he has a constitutional right to reject probation. However, no two members of this Court are able to agree on whether Ray still has the *statutory* right to reject probation described by our supreme court in *Brown*.

More specifically, no two members of this Court are able to agree on the proper interpretation of AS 12.55.090(f): whether, under this statute, defendants in Ray's position still have a statutory right to reject probation — and, if they still have this right, what rules govern the sentencing court's authority or duty with respect to the defendant's final sentence of imprisonment.

Because we cannot reach a majority decision on this issue of statutory interpretation, we certify this issue to the Alaska Supreme Court pursuant to AS 22.05.015(b).

*Why we reject Ray's contention that he has a constitutional right to refuse further probation*

In support of his contention that criminal defendants have a constitutional right to refuse probation, Ray cites the Alaska Supreme Court's decision in *Brown v. State*[9] as well as this Court's decision in *Sweezey v. State*.[10] But even though both of these decisions affirm a probationer's right to refuse probation, neither of these decisions says that this right is a *constitutional* right. Instead, both *Brown* and *Sweezey* declare that the right to refuse probation is derived from "[the Alaska] statutes governing probation". *See Brown*, 559 P.2d at 111 n. 13, and *Sweezey*, 167 P.3d at 80.

---

[9] 559 P.2d 107, 111 n. 13 (Alaska 1977).

[10] 167 P.3d 79, 80–81 (Alaska App. 2007).

Indeed, as our supreme court recognized in *Pete v. State*, 379 P.2d 625, 626 (Alaska 1963), courts have no inherent authority to suspend a portion of a defendant's sentence and to place a defendant on probation. This power must be granted by the legislature. *See also Edwards v. State*, 34 P.3d 962, 968 (Alaska App. 2001).

Because the power to suspend a sentence and impose probation must be granted by statute, the scope and terms of this power are governed by the provisions of the granting statute. This is why, in *Chinuhuk v. State*, 413 P.3d 1215 (Alaska App. 2018), this Court upheld a special type of probation created by the legislature for sex offenders — a type of probation that expressly could not be rejected by the defendant — against the claim that *Brown* prohibited this type of non-refusable probation. *Chinuhuk*, 413 P.3d at 1219–1220.

We therefore reject Ray's contention that he has a constitutional right to refuse further probation. Any such right must derive from statute.

*Why we certify the question of the proper interpretation of AS 12.55.090(f)*
*to the supreme court*

More than forty years ago, in *Brown*, the Alaska Supreme Court construed our probation statutes as giving criminal defendants the right to reject probation. Indeed, during the probation revocation proceedings in Ray's case, the sentencing judge seemingly acknowledged Ray's right to reject further probation. The judge also expressly acknowledged that he should not automatically impose all of Ray's remaining jail time — that he was required, instead, to evaluate Ray's sentence under the *Chaney* sentencing criteria.

Nevertheless, when the time came to impose sentence, the judge adopted the prosecutor's suggestion of extending Ray's probation to 5 years so that, if Ray

committed another felony, he would be subject to an aggravated sentence under AS 12.55.155(c)(20).

The proceedings in the superior court are notable in two respects. First, when Ray announced that he wished to end his probation, the prosecutor never argued that Ray was statutorily prohibited from rejecting further probation — which is the position that the State takes in this appeal. Second, when the prosecutor expressly asked the judge to extend Ray's probation to 5 years, and when the sentencing judge followed the prosecutor's recommendation, Ray's attorney never objected that any continued probation was illegal — which is the position that Ray takes in this appeal. In other words, both parties to this appeal are litigating this case based on legal theories that they never articulated in the trial court.

Ray's position — that he had a right to reject further probation, and that the superior court acted illegally when it subjected him to continuing probation — is supported by longstanding Alaska case law, beginning with the supreme court's 1977 decision in *Brown*. The State's position — that Ray had no right to reject further probation — is based on the legislature's enactment of AS 12.55.090(f):

> Unless the defendant and the prosecuting authority agree ... , the court may not reduce the specific period of probation, or the specific term of suspended incarceration except by the amount of incarceration imposed for a probation violation, if
>
> (1) the sentence was imposed in accordance with a plea agreement under Rule 11, Alaska Rules of Criminal Procedure; and
>
> (2) the [plea] agreement required a specific period of probation or a specific term of suspended incarceration.

– 13 –

2660

As we explain in the three separate opinions that follow, no two members of this Court are able to agree on the proper interpretation of AS 12.55.090(f).

Judge Mannheimer believes that, even after the enactment of AS 12.55.090(f), Ray retained his statutory right to reject probation. It was therefore improper for the sentencing judge to impose a sentence that left Ray on probation for an additional 5 years, and the judge should now re-sentence Ray in conformity with the *Chaney* sentencing criteria.

Judge Suddock likewise believes that, even after the enactment of AS 12.55.090(f), Ray retained his statutory right to reject probation. However, Judge Suddock concludes that, in such cases, AS 12.55.090(f) requires the sentencing judge to impose all of a defendant's remaining suspended jail time, regardless of whether such a sentence would be consistent with *Chaney*.

Judge Allard believes that AS 12.55.090(f) eliminated a defendant's right to reject further probation in all instances where the length of the defendant's term of probation was a specified component of the defendant's plea bargain.

When the members of an appellate court are unable to muster a majority in favor of any disposition, the law declares that the judgement under review will stand as issued — but only by operation of law. The lower court's judgement is neither affirmed nor reversed; it simply goes into effect because the appellate court is unable to decide the appeal. [11]

---

[11] *See*, *e.g.*, *Boldt Machinery & Tools, Inc. v. Wallace*, 366 A.2d 902, 904 (Pa. 1976); *Heritage Resources, Inc. v. NationsBank*, 960 S.W.2d 619, 620 (Tex. 1997); *State ex rel. Taxpayers of Pierce County v. Remann*, 190 P.2d 95, 95 (Wash. 1948). See, in particular, *Appeal of Levine*, 95 A.2d 222 (Pa. 1953), where the Pennsylvania Supreme Court was split three ways regarding the proper disposition of an appeal.

Such an outcome would do little to advance the rights of the parties, or to ensure the proper application of AS 12.55.090(f) in future cases. We therefore certify this issue of statutory interpretation to the Alaska Supreme Court under AS 22.05.015(b).

*Conclusion*

The superior court's decision to revoke Ray's probation is affirmed; the evidence presented at Ray's probation revocation hearing supported the superior court's findings that Ray violated his probation by leaving the Brother Francis Shelter without permission, and by drinking alcohol to excess while he was in Anchorage.

We further reject Ray's contention that defendants who are on probation have a constitutional right to refuse further probation.

But with regard to the meaning and effect of AS 12.55.090(f), this Court is unable to reach a decision, and we therefore certify this issue to the Alaska Supreme Court.

If the Alaska Supreme Court rejects our certification, then the judgement of the superior court will stand, by operation of law.

*The three separate opinions of the members of this Court*

Judge MANNHEIMER.

The question before us is the proper meaning and effect of AS 12.55.090(f), a provision of our probation statutes that was first enacted in 2012. Here is the pertinent language of this statute:

> Unless the defendant and the prosecuting authority agree ... , the court may not reduce the specific period of probation, or the specific term of suspended incarceration except by the amount of incarceration imposed for a probation violation, if
>
> (1) the sentence was imposed in accordance with a plea agreement under Rule 11, Alaska Rules of Criminal Procedure; and
>
> (2) the [plea] agreement required a specific period of probation or a specific term of suspended incarceration.

Nothing in the language of this statute speaks *directly* to a defendant's right to reject probation. That is, the statute does not expressly say that a defendant whose plea bargain contains a specific period of probation has no right to reject further probation during the life of the sentence. Instead, the statute says that when a defendant is sentenced under a plea bargain which calls for a specific term of probation, *the court* is prohibited from reducing the defendant's term of probation unless both the government and the defendant agree.

My colleague, Judge Allard, concludes that this is just another way of saying that defendants in this situation have no right to reject probation. But the

legislative history of this provision — in particular, the lengthy testimony offered in support of the statute by Deputy Attorney General Richard Svobodny — shows that this language is addressed to a different problem: the problem of *judges* who unilaterally decide to terminate a recalcitrant defendant's probation because they are tired of dealing with the defendant.

AS 12.55.090(f) was proposed by the Department of Law, and the Department sent two different representatives — Assistant Attorney General Anne Carpeneti and Deputy Attorney General Svobodny — to explain the meaning of the proposed statute to the legislature.

Of the two Department of Law representatives, Mr. Svobodny offered the most extensive description of the problem that AS 12.55.090(f) was intended to solve. According to Svobodny's remarks to the House Judiciary Committee, this statute was intended to address the situation where a defendant violates their probation, and in response the judge imposes "two days in jail" for the probation violation and then cuts the defendant loose from any further probation — with the result that the "years of probation" that the State bargained for "are going to go away" simply because the judge has concluded that probation is not working. [1]

Not once during Mr. Svobodny's lengthy remarks to the legislature did he assert that the new statute was intended to abrogate a defendant's right to reject further probation. Instead, Mr. Svobodny described the problem as a *judicial* problem — judges who misuse their sentencing discretion in probation revocation proceedings:

> *Mr. Svobodny*: If the offender violates a condition of probation, ... the judge just can't reward the person — can't say, "This is all going away, because I'm tired of you." ...

---

[1] Minutes of the House Judiciary Committee for April 12, 2012, discussion of Senate Bill 210 @ 2:27 – 2:32.

The judge [has] the discretion ... to impose any [sentence] from nothing up to [the full amount of the defendant's remaining suspended jail time.] [But] what the judge couldn't do would be [to] say, "Well, ... you have that four years of probation that was bargained for. I'm going to reduce that by half." [2]

Two minutes later, Mr. Svobodny reiterated:

> *Mr. Svobodny*: What we're trying to say [in subsection (f)] is [that a] judge shouldn't [be able to] say, "Okay, we're done. Go away. I'm eliminating ... that four years [of probation]. ... The judge [shouldn't be able to say], "Because there's been a probation revocation, you're going to get something less than you bargained for." ... Kind of a reward for doing something bad. [3]

In other words, according to Mr. Svobodny, the Department of Law intended the new statute to restrict *judicial sentencing discretion* in probation revocation hearings, so that *judges* could not unilaterally reduce a defendant's bargained-for term of probation when the judge grew tired of dealing with the defendant.

Neither Ms. Carpeneti nor Mr. Svobodny ever informed the legislature that AS 12.55.090(f) was intended to eliminate a defendant's right to reject probation.

Ever since our supreme court's decision in *Brown v. State*, 559 P.2d 107, 111 n. 13 (Alaska 1977), Alaska law has recognized that defendants have a statutory right to reject probation. If the Department of Law had wanted the legislature to eliminate this right for a class of defendants (those who resolve their cases through plea agreements that specify a term of probation — probably the majority of defendants), then

---

[2] *Id.* @ 2:31 – 2:32.

[3] *Id.* @ 2:34:00 – 2:34:52.

one would expect the Department of Law's representatives to (1) explicitly identify this issue and (2) explicitly ask the legislature to change the existing law on this point. But the legislative history contains no such discussion.

For these reasons, the meaning of the statute is, at best, ambiguous on the question of whether defendants retain their pre-existing right to reject probation. Alaska law therefore directs us to construe this penal statute against the government and in favor of criminal defendants' pre-existing right to reject probation. [4]

Judge Suddock agrees that AS 12.55.090(f) was not meant to abrogate a defendant's right to reject probation. However, Judge Suddock concludes that the statute was intended to alter the *consequences* of a defendant's rejection of probation. Under Judge Suddock's view, when a defendant rejects a term of probation that was specified in the defendant's plea bargain, the sentencing court must automatically impose the full remaining amount of the defendant's suspended jail time, even if such a sentence would otherwise be incompatible with the *Chaney* sentencing criteria.

This Court addressed this same sentencing issue in *State v. Henry*, 240 P.3d 846 (Alaska App. 2010). In *Henry*, we held that even when a defendant rejects further probation and asks for a "flat-time" sentence, the sentencing judge is not allowed to automatically impose all of the defendant's remaining jail time. Instead, the judge is required to evaluate the defendant's case under the *Chaney* sentencing criteria, and to

---

[4]   *See State v. Andrews*, 707 P.2d 900, 907 (Alaska App. 1985), opinion adopted by the supreme court in *State v. Andrews*, 723 P.2d 85, 86 (Alaska 1986) ("Ambiguities in criminal statutes must be narrowly read and construed strictly against the government."); *see also Wells v. State*, 706 P.2d 711, 713 (Alaska App. 1985) ("It is well established that, in accordance with the rule of lenity, ambiguities in penal statutes must be resolved in favor of the accused.").

impose an appropriate sentence under the *Chaney* criteria — a sentence which might be shorter than the full amount of the defendant's remaining suspended jail time. [5]

In *Henry*, we addressed the argument that this rule should not apply to a defendant whose plea agreement expressly called for the defendant to receive a specific term of suspended imprisonment — the argument that, when a defendant accepted such a plea bargain, the defendant impliedly waived their right to have the judge impose a sentence based on the *Chaney* criteria, and thus the sentencing judge was *required* to impose the full remaining amount of the defendant's suspended sentence, even if that sentence might not be supportable under the *Chaney* criteria. [6]

In *Henry*, this Court rejected the argument that these defendants had impliedly waived their right to be sentenced under the *Chaney* criteria when they accepted their plea bargains. We did not resolve the question of whether a defendant could *ever* lawfully waive their right to a sentence that was supportable under the *Chaney* criteria. But we did hold that, if the State wished to have a defendant waive their right

---

[5]   *Henry*, 240 P.3d at 848–49; *DeMario v. State*, 933 P.2d 558, 562 (Alaska App. 1997).

[6]   *Henry*, 240 P.3d at 849. Here is how the *Henry* opinion described the State's contention on appeal:

> According to the State, if a defendant agrees to a sentence that includes probation and suspended jail time, the defendant necessarily relinquishes the right to later terminate their probation and ask the sentencing court to impose an active sentence of imprisonment based on the *Chaney* sentencing criteria. Rather, if the defendant violates the conditions of their probation, the sentencing court must impose the entire amount of the previously suspended jail time (regardless of whether the court believes that such a sentence comports with the *Chaney* criteria) — or, alternatively, the court must allow the State to rescind the plea bargain and return the parties to the *status quo ante* (a rescission of the defendant's conviction and sentence under the plea bargain, a return of that criminal charge to a pre-trial posture, and a reinstatement of any other charges that were dismissed as part of the plea bargain).

to a *Chaney*-compliant sentence, at the very least the defendant's plea agreement had to expressly say so.[7]

Judge Suddock points out that, at one point during the legislative discussion of AS 12.55.090(f), Assistant Attorney General Carpeneti indicated that the proposed statute was intended to address the situation discussed in *Henry*. Because of this passing remark, Judge Suddock concludes that AS 12.55.090(f) should be interpreted as reversing the holding in *Henry* that a probationer's sentence must be compatible with the *Chaney* criteria. Judge Suddock concludes that, under AS 12.55.090(f), when a defendant rejects a previously bargained-for probation, the defendant must receive all of their remaining suspended jail time, even if such a sentence would not be supportable under *Chaney*.

But this interpretation of the statute is inconsistent with the statute's legislative history. During the hearings on the proposed legislation, both Ms. Carpeneti and Mr. Svobodny told the legislature that, under AS 12.55.090(f), the sentencing of probationers would continue to be governed by *Chaney*.

Ms. Carpeneti told the House Judiciary Committee that when a judge imposed sentence under these circumstances, the judge was *not* obligated to impose the full amount of the defendant's remaining jail time. Rather, the sentencing judge was required to consider the nature of the defendant's conduct in light of the applicable sentencing law, and to impose an appropriate sentence.[8] And Mr. Svobodny likewise told the Committee that the Department of Law was not trying to tie the judge's hands

---

[7]   *Henry*, 240 P.3d at 851.

[8]   Minutes of the House Judiciary Committee for April 11, 2012, discussion of Senate Bill 210, testimony of Assistant Attorney General Anne Carpeneti @ 1:39 – 1:40.

with respect to the amount of suspended jail time that should be imposed — that this decision was up to the judge. [9]

A second, independent reason for rejecting Judge Suddock's interpretation of the statute is that appellate courts should normally try to construe statutes in a way that does not create constitutional problems, if we can avoid it. As our supreme court has said, an appellate court generally seeks to construe statutes "to avoid constitutional infirmity where that can be done without doing violence to the legislature's intent." [10]

The sentencing criteria established by the Alaska Supreme Court in *State v. Chaney* are constitutionally based. The supreme court declared that these criteria derive from the mandate of Article I, Section 12 of the Alaska Constitution that penal administration be based on the principles of reformation and protection of the public. [11]

Because the *Chaney* criteria are constitutionally based, if AS 12.55.090(f) were construed as a legislative mandate to exempt a category of sentencing decisions from the *Chaney* criteria, this would raise significant constitutional problems. And there is little in the legislative history to suggest that the legislature intended to take on these constitutional issues.

For these reasons, I reject Judge Suddock's suggestion that AS 12.55.090(f) should be interpreted as requiring judges to automatically impose all of a defendant's remaining suspended jail time if the defendant rejects further probation.

In conclusion, I believe that the legislative history of AS 12.55.090(f) shows that this statute was not intended to abrogate the statutory right to reject probation,

---

[9] Minutes of the House Judiciary Committee for April 12, 2012, discussion of Senate Bill 210, testimony of Deputy Attorney General Richard Svobodny @ 2:31.

[10] *Barber v. Dept. of Corrections*, 314 P.3d 58, 68 (Alaska 2013).

[11] *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

nor was it intended to abrogate a defendant's right to a sentence that is supportable under the *Chaney* sentencing criteria.

I would therefore reverse the judgement of the superior court and direct that court to terminate Ray's probation. However, because it was illegal for the superior court to continue Ray on probation, the superior court should be allowed to reconsider its sentencing decision — in particular, its decision not to impose the remaining 90 days of Ray's suspended jail time.

Judge SUDDOCK.

In our 2010 case *State v. Henry*, we characterized the State's position on appeal as follows:

> According to the State, if a defendant agrees to a sentence that includes probation and suspended jail time, the defendant necessarily relinquishes the right to later terminate their probation and ask the sentencing court to impose an active sentence of imprisonment based on the Chaney sentencing criteria. Rather, if the defendant violates the conditions of their probation, the sentencing court must impose the entire amount of the previously suspended jail time (regardless of whether the court believes that such a sentence comports with the Chaney criteria). . . .[1]

We rejected this formulation, holding that when such a probationer rejects probation, the sentencing court must instead apply the *Chaney* criteria and sentence the defendant accordingly, even if this were to lead to a less than full imposition of the suspended time specified in the plea agreement.[2]

Two years after we issued our decision in *Henry*, the Department of Law proposed legislation addressing the topic of a judge's sentencing discretion in probation proceedings. A representative from the Department of Law testified before the legislature that the proposed legislation was intended to overrule our decision in *Henry*. I accordingly conclude that AS 12.55.090(f), as enacted in 2012, bars a sentencing court from ever absolving a defendant from the suspended time to serve specified in a plea agreement, absent the State's consent. Thus, when a defendant voluntarily rejects probation, they must serve all of their remaining suspended time.

---

[1]   *State v. Henry*, 240 P.3d 846, 849 (Alaska App. 2010).

[2]   *Id.* at 851.

AS 12.55.090(f) (2012) reads in relevant part as follows:

> Unless the defendant and the prosecuting authority agree at the probation revocation proceeding or other proceeding, the court may not reduce the specific period of probation or the specific term of suspended incarceration except by the amount of incarceration imposed for a probation violation, if

> (1) the sentence was imposed in accordance with a plea agreement under Rule 11, Alaska Rules of Criminal Procedure; and

> (2) the agreement required a specific period of probation or a specific term of suspended incarceration.

Judge Mannheimer and I conclude that this statute does not abrogate a defendant's statutory right to reject probation. I further conclude that, since the statute precludes forgiveness of any suspended time specified in a plea agreement, the statute's logic requires an imposition of all suspended time when a defendant rejects probation.

Judge Mannheimer analyzes the testimony of the two representatives of the Department of Law and arrives at a contrary construction of the statute. He reasons in part that these witnesses testified that the statute was *not* intended to eliminate consideration of the *Chaney* factors when a judge sentences a probationer, and therefore that the *Chaney* factors remain applicable when a defendant rejects probation. Under this construction of the statute, the sentencing judge would be free to impose a less-than-maximum sentence and to terminate any residual period of probation, contravening the terms of the original plea agreement.

I read the testimony of the State's witnesses quite differently. Their oft-repeated overarching theme was that, because "a deal is a deal," a court should not be

authorized to unilaterally stray from the terms of an original plea agreement. When these witnesses indicated that the *Chaney* factors remain applicable, this was with respect to a hypothetical sentencing for a routine probation violation. There, as to the amount of suspended time to be imposed *consistently* with the original plea agreement, the witnesses testified that the judge must apply the *Chaney* factors. Their point was that, if the judge imposed less than the maximum sentence for a probation violation, the judge could not then prospectively excuse the defendant from the remaining suspended time, or from any portion of the remaining probationary period.

But the two State's witnesses never suggested that the proposed legislation did not also apply to a probationer who rejects probation altogether. As will be seen, two other witnesses did address that circumstance, and both of these witnesses testified that the legislation would require an automatic full imposition of all suspended time when a probationer rejects probation. One of the State's witnesses then acknowledged the point and did not contradict it.

Fairly read, nothing in the testimony of the two State's witnesses suggested that, under the State's proposed remedial legislation, a court could ever act *inconsistently* with the original plea agreement. Indeed, they testified that such judicial discretion was anathema to the Department of Law, because allowing judges to contravene an original plea bargain was poor public policy.[3]

Accordingly, I conclude that via this legislation, the Department of Law succeeded in its announced goal of legislatively overruling our holding in *Henry* that a

---

[3]   *See* Minutes of House Judiciary Comm., Senate Bill 210, testimony of Assistant Attorney General Anne Carpeneti, 1:44-1:45 p.m. (Apr. 11, 2012); Minutes of House Judiciary Comm., Senate Bill 210, testimony of Deputy Attorney General Richard Svobodny, 2:27 p.m. (Apr. 12, 2012).

court has the authority to sentence a probationer who rejects probation inconsistently with an original plea agreement.

To explain my conclusion, I turn to the testimony of four witnesses who testified before the House Judiciary and Finance Committees. On April 11, 2012, Deputy Public Defender Douglas Moody appeared before the House Judiciary Committee. Moody testified that, under the proposed legislation, a sentencing judge would be required to impose all of a defendant's remaining suspended time if the defendant rejected probation.[4] That is, Moody testified that the legislation would abrogate our holding in *Henry*.[5] Moody argued that the legislature should not adopt the proposed legislation, but rather should leave standing the rule in *Henry* that a judge must sentence a rejecting probationer to a *Chaney*-compliant sentence, and not be required to automatically impose all remaining suspended time.[6]

This point was reinforced the following day by Public Defender Quinlan Steiner. Like Moody, Steiner testified that the proposed legislation would unwisely require a judge to impose a maximum sentence when a probationer rejects probation:

> When a client rejects probation, all of their time is imposed,
> [but under existing law] that can be subject to shortening of
> the [full] amount of suspended time. What this section does
> is kind of shifts the current law from that . . . to exactly the
> opposite . . . .
>         . . . .

---

[4] Minutes of the House Judiciary Comm., Senate Bill 210, testimony of Deputy Public Defender Douglas Moody, 2:23-2:24 p.m. (Apr. 11, 2012).

[5] *See id.*

[6] *Id.* at 2:30 p.m.

> [T]he imposition of [all suspended time] would be statutorily required, absent an agreement . . . .[7]

Steiner also indicated that he had discussed this understanding with one of the State's witnesses, Assistant Attorney General Anne Carpeneti, and that they were on the same page as to the effect of the legislation.[8]

Deputy Attorney General Richard Svobodny was present during Steiner's testimony, and he testified immediately thereafter. Svobodny prefaced his remarks by noting that the principle impelling the Department of Law to seek legislative redress was that "a deal is a deal."[9] Svobodny then expressly acknowledged Steiner's testimony regarding the act's consequence when a probationer rejects probation, *without contradicting that testimony*.[10] Svobodny instead turned his attention to what he termed the vastly more common situation ("probably 95% of the times that this comes up") of a probationer who commits a probation violation but does not reject probation.[11] In a clear nod to our 2010 decision in *Henry*, Svobodny stated:

> What the decisions in the last year have said is basically the judge can say . . . you have violated the law, that was a violation of your conditions of probation, but I'm not going

---

[7] Minutes of House Judiciary Comm., Senate Bill 210, testimony of Public Defender Quinlan Steiner, 2:17-2:18 p.m. (Apr. 12, 2012).

[8] *Id.* at 2:16-2:18 p.m.

[9] Minutes of House Judiciary Comm., Senate Bill 210, testimony of Deputy Attorney General Richard Svobodny, 2:21 p.m. (Apr. 12, 2012).

[10] *Id.*

[11] *Id.* at 2:22 p.m.

to do anything, and I'm going to just say that what you have done now is it.[12]

If Svobodny had disagreed with the assessment of the two witnesses from the Public Defender Agency that the legislation required imposition of all suspended time when a probationer rejects probation, he clearly would have said so; to fail to do so would have been misleading. But Svobodny instead characterized that situation as rare, and addressed the balance of his remarks to a different context — that of sentences for probation violations not accompanied by a rejection of probation. In this context, Svobodny agreed that the *Chaney* principles applied, but he testified that judicial discretion to shorten any remaining suspended time or probationary period should be prohibited.[13]

In my view, Judge Mannheimer goes astray when he generalizes Svobodny's remarks about sentences for routine violations of conditions of probation, to the separate and vastly rarer context of the consequence of a rejection of probation. The clear tenor of Svobodny's remarks was that a judge should never be allowed to deviate from the terms of a plea bargain, and that decisions such as *Henry* should be overruled by the legislature. Surely the Department of Law did not trouble itself to draft legislation to remedy a situation that rarely occurs — arbitrary judicial reductions in probationers' sentences — only to leave intact the holding of the case with which it expressly disagreed, *Henry*.

Assistant Attorney General Anne Carpeneti also testified, to both the House Judiciary and Finance Committees. Carpeneti discussed *Henry* in the context of Svobodny's example about judges who, without justification, shorten the sentence of a

---

[12] *Id.* at 2:27 p.m.

[13] *Id.* at 2:22-2:24 p.m.

probationer who has violated applicable terms of probation but who does not reject probation. But her clear point was that the original plea agreement should always remain inviolate whenever a judge sentences a probationer, and accordingly that our holding to the contrary in *Henry* should be overruled.[14]

I conclude that the Department of Law, aggrieved by our decision in *Henry,* drafted legislation to deprive judges of the discretion to alter the terms of a plea bargain when a probationer is subsequently re-sentenced, and thereby to legislatively overrule *Henry*. My reading of the legislative history convinces me that the legislature intended to comprehensively constrain judicial discretion in this way. I would accordingly remand the case to the trial court, directing the judge to instruct Ray about the consequences of a rejection of probation. If Ray then persists in his desire to reject probation, the judge must sentence him to serve all of his remaining suspended time.

---

[14] Minutes of House Finance Comm., Senate Bill 210, testimony of Assistant Attorney General Anne Carpeneti, 7:37-7:38 p.m., 7:45-7:46 p.m. (Apr. 13, 2012).

Judge ALLARD.

I disagree with Chief Judge Mannheimer's and Judge Suddock's interpretations of AS 12.55.090(f). Instead, I agree with the State that AS 12.55.090(f) was intended to prohibit a defendant from unilaterally rejecting probation in cases where the parties specifically agreed to a probationary term as part of a plea agreement.

I come to this conclusion based on the plain language of the statute and the accompanying legislative history. First, the plain language of the statute indicates that the purpose of AS 12.55.090(f) was to ensure that the parties to a plea agreement that involved a specific period of probation or a specific term of suspended incarceration are held to that agreement. As originally enacted in 2012,[1] AS 12.55.090(f) stated:

> Unless the defendant and the prosecuting authority agree . . . , the court may not reduce the specific period of probation, or the specific term of suspended incarceration except by the amount of incarceration imposed for a probation violation, if
>
> (1) the sentence was imposed in accordance with a plea agreement under Rule 11, Alaska Rules of Criminal Procedure; and
>
> (2) the [plea] agreement required a specific period of probation or a specific term of suspended incarceration.

In other words, under the plain language of the statute, a court has no authority to reduce a specific agreed-upon period of probation unless the parties to the original agreement agree to that reduction.

---

[1] Alaska Statute 12.55.090(f) was amended slightly in 2016, but the language quoted here remains the same.

In my view, this language necessarily implicates a defendant's right to formally reject probation and be resentenced to a "flat-time" sentence — *i.e.*, a sentence without a probationary term or suspended time — because such a resentencing cannot take place if the court is not authorized to conduct that resentencing.

As a practical matter, a defendant can "reject" probation simply by refusing to abide by their probation obligations. Such non-compliance will inevitably lead to multiple petitions to revoke probation, and eventually to imposition of all of the probationer's suspended time — thereby "ending" the defendant's probation because there is no longer any suspended time left to impose. Alaska law has historically allowed a defendant to avoid such a long drawn-out process by allowing a defendant to formally reject probation and be resentenced under the *Chaney* criteria to a "flat-time" sentence.[2] But a defendant cannot formally reject probation and be resentenced to a flat-time sentence unless the court is authorized to conduct that resentencing. Thus, under the plain language of AS 12.55.090(f), the court cannot reduce a bargained-for probationary term — and a defendant cannot elect to reject probation — "[u]nless the defendant and the prosecuting authority agree" to that resentencing.[3]

The legislative history supports this reading of the statute. Although not as clear as it could be,[4] the legislative history does make clear that AS 12.55.090(f) was

---

[2]   *See Brown v. State*, 559 P.2d 107, 111 n.13 (Alaska 1977); *State v. Henry*, 240 P.3d 846, 848-49 (Alaska App. 2010).

[3]   In 2016, the legislature amended AS 12.55.090(f) to also allow for reduction of a probationary term in cases where "the person qualifies for a reduction under AS 33.05.020(h)" or "a probation officer recommends to the court that probation be terminated and the defendant be discharged from probation under (g) of this section or AS 33.05.040." SLA 2016, ch. 36, §80.

[4]   I acknowledge that the Public Defender Agency representatives had a different view
(continued...)

introduced in response to this Court's decision in *State v. Henry*. In her initial remarks at the April 11, 2012 House Judiciary Committee Meeting, Assistant Attorney General Anne Carpeneti stated that the amendment "deal[s] with the situation that arose . . . in *State v. Henry*."[5] Ms. Carpeneti then described *Henry* as involving a defendant who "was sentenced under [a] plea agreement . . . violated his probation . . . and asked for the period of probation to be reduced."[6] Ms. Carpeneti explained that the the State opposed any reduction in the defendant's probationary term because it was a bargained-for term of the plea agreement; but the Court of Appeals permitted the trial court to end the defendant's probation and to resentence the defendant under the *Chaney* criteria.[7] Ms. Carpeneti's description of the State's position in *Henry* was consistent with the State's position in its briefing in *Henry* (although inconsistent with our description of the State's position in our decision in *Henry*[8]).

---

[4] (...continued)
of the legislation than the Department of Law representatives, and that this discrepancy was never explicitly addressed or resolved.

[5] Minutes of House Judiciary Comm., Senate Bill 210, testimony of Assistant Attorney General Anne Carpeneti, 1:37 p.m. (Apr. 11, 2012).

[6] *Id.* at 1:39 p.m.

[7] *Id.*

[8] I note that we partially misdescribed the State's position in our opinion in *Henry*. In *Henry*, we described the State's position as allowing a defendant to reject probation but requiring either imposition of the remaining suspended time or rescission of the original plea agreement. *Henry*, 240 P.3d at 849. However, a review of the briefing in *Henry* makes clear that the State's primary position in *Henry* was that a defendant who agreed to probation as a bargained-for term of their plea agreement should not be allowed to unilaterally reject probation. This is the same position that the State takes now, and that I view the Department of Law representatives as taking at the legislative hearings on AS 12.55.090(f).

In a subsequent hearing before the House Finance Committee, Ms. Carpeneti reiterated that the purpose of the statutory amendment was to address a recent Court of Appeals opinion and to prevent the court from reducing the amount of the probationary term unless both parties agreed.[9]  Thus, under AS 12.55.090(f), the court would "look at the *Chaney* criteria to decide what effect this violation of probation should have," but the sentence for the probation violation could not include reduction of the defendant's bargained-for probationary term.[10]

Deputy Attorney General Richard Svobodny's testimony to the House Judiciary Committee is in accord with Ms. Carpeneti's description of the purpose of AS 12.55.090(f).  Mr. Svobodny stated that the new legislation required judges to abide by the precept that "a deal is a deal."[11]  According to Mr. Svobodny, it is not fair for a trial court to terminate probation when it is part of a bargained-for exchange because "both sides have negotiated in good faith over what is an appropriate sentence" and it is not "justice" for a judge to reduce the amount of probation that was bargained for.[12]

Mr. Svobodny also noted that there were other parties' interests at stake and that "lots of times, a period of probation . . . is determined based upon getting [the] victim paid [restitution]."[13]  As Mr. Svobodny pointed out, victims would have to resort to civil courts to get restitution if a judge eliminated a bargained-for probation

---

[9]   Minutes of House Finance Comm., Senate Bill 210, testimony of Assistant Attorney General Anne Carpeneti, 7:36-7:38 p.m. (Apr. 13, 2012).

[10]   Minutes of House Judiciary Comm., Senate Bill 210, testimony of Assistant Attorney General Anne Carpeneti, 1:39-1:40 p.m. (Apr. 11, 2012).

[11]   Minutes of House Judiciary Comm., Senate Bill 210, testimony of Deputy Attorney General Richard Svobodny, 2:21 p.m. (Apr. 12, 2012).

[12]   *Id.* at 2:23-2:24 p.m.

[13]   *Id.* at 2:27 p.m.

requirement by imposing a flat-time sentence.[14] Lastly, Mr. Svobodny emphasized that the statutory amendment did not "tie the judge's hands" as to how much suspended time to impose for a violation.[15]

Based on the plain language of the amendment and the accompanying legislative history, I conclude that AS 12.55.090(f) was enacted to prevent a defendant from unilaterally rejecting probation if the term of probation was part of a bargained-for term of the defendant's plea agreement.

---

[14] *Id.* at 2:28 p.m.

[15] *Id.* at 2:31 p.m.