*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JASON D. RAY, | ) | |
| | ) | Supreme Court No. S-17645 |
| Petitioner, | ) | |
| | ) | Court of Appeals No. A-12135 |
| v. | ) | Superior Court No. 3KO-13-00627 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7605 – July 22, 2022 |
| | ) | |

Certified Question from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Steve W. Cole, Judge.

Appearances: Emily Jura, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Petitioner. Timothy W. Terrell, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Respondent.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices

BORGHESAN, Justice
CARNEY, Justice, dissenting.

## I.     INTRODUCTION

In *Henry v. State* the court of appeals held that a defendant who entered a plea agreement providing for a specific period of probation has the right, when being

sentenced for a subsequent probation violation, to reject further probation and to serve a sentence of active imprisonment only.[1] Now the court of appeals has certified to us the question of whether the legislature intended to abrogate that right when it enacted AS 12.55.090(f).[2] We conclude that it did. Although AS 12.55.090(f) does not expressly mention a defendant's right to reject probation, its plain text precludes a judge from reducing or terminating a previously-agreed-upon period of probation unless both the prosecution and the defendant agree, and the legislative history does not persuade us that the legislature intended something other than the plain meaning of the language it used.

## II.    FACTS AND PROCEEDINGS

### A.    Superior Court Proceedings

Jason Ray was arrested in October 2013 for stealing a pair of boots from a grocery store in Kodiak. Because Ray had two prior theft convictions, the State charged him with theft in the second degree. Ray pleaded guilty as part of a plea agreement pursuant to Alaska Criminal Rule 11.[3] The plea agreement called for Ray to receive a sentence of 24 months' imprisonment with 20 months suspended, followed by three years of supervised probation. Ray served his four months in prison and was then released on supervised probation.

---

[1]    240 P.3d 846, 851 (Alaska App. 2010).

[2]    The legislature first enacted AS 12.55.090(f) in 2012. Ch. 70, § 10, SLA 2012. The legislature later amended the statute in 2016, significantly modifying its operation. Ch. 36, § 80, SLA 2016. Our decision interprets the version of AS 12.55.090(f) in effect from 2012-2016, which was applied to the petitioner in this case. We express no opinion on the interpretation of the statute as currently written.

[3]    *See* Alaska R. Crim. P. 11(e)(1)-(2) (establishing procedure for presenting plea agreement for court approval and stating that after approval court "shall impose sentence in accordance with the terms of that agreement").

Several months later, the State filed a petition to revoke probation, alleging that Ray had violated conditions of probation. At the probation adjudication hearing, Ray admitted that he had violated two conditions, and the superior court found that he had violated two others. At the disposition hearing, Ray announced that he wanted to reject further probation. Neither the sentencing judge nor the prosecutor had been aware of Ray's intentions before this time, but both acknowledged his desire to reject probation. However, in addition to sentencing him to serve 16 months (which was all but 90 days of his remaining suspended jail time), the superior court placed Ray on unsupervised probation for five years. The only condition of this unsupervised probation was that Ray obey the law. The superior court's apparent purpose in keeping Ray on unsupervised probation was to allow the court to impose a more severe sentence if Ray committed another felony before his five years of probation expired.[4]

B.     **Court Of Appeals Proceedings**

Ray appealed the sentence on two grounds. First, Ray contended that the superior court erred by ruling against him on the two contested violations of probation.[5] The court of appeals disagreed, concluding that the evidence was sufficient to support the superior court's findings that Ray violated the two probation conditions.[6]

Second, Ray argued that the superior court erred by not honoring his right to reject further probation. Ray relied on the court of appeals' decision in *State v. Henry*, which held that a defendant whose Rule 11 plea agreement provides for a specific period

---

[4]     Given the arguments by the parties and the question certified to us by the court of appeals, we do not address the distinct question of whether it was proper for the superior court to impose *more* probation time on Ray than the amount provided in his Rule 11 agreement.

[5]     *Ray v. State*, 452 P.3d 688, 690 (Alaska App. 2019).

[6]     *Id.*

of probation has the right, when being sentenced for a subsequent probation violation, to elect to serve only active imprisonment rather than any further probation.[7]

In response, the State argued that the legislature had abrogated the *Henry* decision by enacting AS 12.55.090(f), which limits a judge's authority to reduce a period of probation provided for in a Rule 11 agreement:

> Unless the defendant and prosecuting authority agree at the probation revocation proceeding or other proceeding, the court may not reduce the specific period of probation, or the specific term of suspended incarceration except by the amount of incarceration imposed for a probation violation, if
>
> > (1) the sentence was imposed in accordance with a plea agreement under Rule 11, Alaska Rules of Criminal Procedure; and
> >
> > (2) the agreement required a specific period of probation or a specific term of suspended incarceration.[8]

The State argued that this statute, by precluding a judge from "reduc[ing] the specific period of probation" set forth in a Rule 11 agreement unless the prosecutor agrees, eliminated the right of defendants like Ray to reject a previously-agreed-upon period of probation.[9]

---

[7]      *Id.*; *Henry v. State*, 240 P.3d 846, 851 (Alaska App. 2010).

[8]      Ch. 70, § 10, SLA 2012.  The legislature also amended AS 12.55.090(b) to reflect the addition of subsection (f):  "Except as otherwise provided in (f) of this section, the court may revoke or modify any condition of probation, or may change the period of probation."  In 2016 the legislature modified subsection (f) by clarifying that an "other proceeding" must be "related to a probation violation," and adding two other circumstances under which courts may reduce the period of probation or term of suspended incarceration.  Ch. 36, § 80, SLA 2016.

[9]      *Ray*, 452 P.3d at 693.

The court of appeals was unable to resolve this dispute. The three judges on the court of appeals wrote separately, each proposing a different interpretation of AS 12.55.090(f).[10]

### 1. Judge Mannheimer's separate opinion

Judge Mannheimer concluded that AS 12.55.090(f) does not abolish a defendant's right to reject probation provided for in a plea agreement.[11] He reasoned that had the legislature intended to abolish this right, the statute would have expressly said so.[12] Judge Mannheimer instead concluded the statute prohibits a court only from unilaterally reducing the defendant's period of probation unless both the prosecuting authority and defendant agree.[13] In his view, the legislative history demonstrated an intent "to restrict *judicial sentencing discretion* in probation revocation hearings, so that *judges* could not unilaterally reduce a defendant's bargained-for period of probation when the judge grew tired of dealing with the defendant."[14] Judge Mannheimer concluded that the legislature did not intend to repeal the right to reject probation, but instead intended only to limit the discretion of judges who do not want to "deal[]" with troublesome probationers.[15]

Judge Mannheimer also concluded that, under AS 12.55.090(f), defendants who reject further probation are not automatically sentenced to the remainder of their

---

[10]     *Id.* at 695.

[11]     *Id.* at 698-99 (Mannheimer, J., writing separately).

[12]     *Id.* at 697.

[13]     *Id.* at 696-97.

[14]     *Id.* (emphasis in original).

[15]     *Id.* at 697.

suspended term of imprisonment.[16] In his view, because a defendant does not waive any rights that were not specifically and explicitly waived in the plea bargain, a defendant who rejects probation must be re-sentenced according to the criteria described in *State v. Chaney*.[17]

### 2. Judge Suddock's separate opinion

Judge Suddock agreed with Judge Mannheimer that AS 12.55.090(f) did not abolish a defendant's right to reject probation previously agreed to in a Rule 11 plea agreement.[18] But Judge Suddock concluded that AS 12.55.090(f) did affect the consequences of this right: If a defendant rejects further probation, the judge is required to impose the balance of suspended time and has no discretion to calculate a term of imprisonment according to the *Chaney* criteria.[19]

Like Judge Mannheimer, Judge Suddock relied heavily on legislative history. But what Judge Suddock found prominent was an intent by the legislature to overrule the *Henry* decision.[20] He observed that testimony from the witnesses supporting the legislation emphasized that "a deal is a deal": Once the defendant and prosecuting authority execute a plea agreement, the agreement's terms cannot be altered by the judge

---

[16]    *Id.* at 698-99.

[17]    *Id.* at 697-98. In *State v. Chaney* we announced constitutionally derived criteria a court must consider when imposing a sentence of imprisonment. 477 P.2d 441, 443-44 (Alaska 1970). These criteria are codified at AS 12.55.005.

[18]    *Id.* at 699 (Suddock, J., writing separately).

[19]    *Id.*

[20]    *Id.* at 699-701.

after sentencing.[21] He therefore concluded that, if the defendant rejects probation, the sentencing court must impose all the remaining suspended time of imprisonment without regard to the *Chaney* sentencing criteria.[22]

### 3. Judge Allard's separate opinion

Judge Allard concluded that AS 12.55.090(f) eliminated a defendant's right to reject further probation if the length of the defendant's probation was a specified component of the defendant's plea bargain.[23] Judge Allard began with the language of the statute.[24] She observed that the statute's terms give a judge no authority to reduce a period of probation specified in a Rule 11 agreement unless the parties agree to that reduction.[25] She reasoned that this language necessarily implicates a defendant's right to reject probation because, as a practical matter, "a defendant cannot formally reject probation and be resentenced to a flat-time sentence unless the court is authorized to conduct that resentencing."[26]

Judge Allard turned next to the legislative history. She concluded that "[a]lthough not as clear as it could be, the legislative history does make clear that AS 12.55.090(f) was introduced in response to [the] decision in *State v. Henry*."[27] She highlighted testimony that "the State opposed any reduction in the defendant's

---

[21]     *Id.*

[22]     *Id.* at 701.

[23]     *Id.* at 703 (Allard, J., writing separately).

[24]     *Id.* at 702.

[25]     *Id.*

[26]     *Id.*

[27]     *Id.* (footnote omitted).

probationary term because it was a bargained-for term of the plea agreement" — which was the State's position in *Henry*.[28] Judge Allard also highlighted testimony that "a deal is a deal" and that it was "not fair for a trial court to terminate probation when it is part of a bargained-for exchange because 'both sides have negotiated in good faith over what is an appropriate sentence.' "[29]

Judge Allard concluded, based on her analysis of the text and legislative history, "that AS 12.55.090(f) was enacted to prevent a defendant from unilaterally rejecting probation if the period of probation was part of a bargained-for term of the defendant's plea agreement."[30]

## C. Certification To This Court

With no majority, the court of appeals certified the question of how to interpret AS 12.55.090(f) to this court.[31]

## III. DISCUSSION

### A. Prior To The Enactment Of AS 12.55.090(f), Defendants Had The Right To Reject Probation Provided For In A Rule 11 Plea Agreement.

Probation is a form of punishment typically imposed as an alternative to a

---

[28]     *Id.* at 703 (citing Minutes, H. Judiciary Comm. Hearing on S.B. 210, 27th Leg., 2d Sess. 1:36-40 (Apr. 11, 2012) (testimony of Anne Carpeneti, Assistant Att'y Gen.); *see also State v. Henry*, 240 P.3d 846, 849 (Alaska App. 2010).

[29]     *Id.* (quoting Minutes, H. Judiciary Comm. Hearing on S.B. 210, 27th Leg., 2d Sess. 2:21-24 (Apr. 12, 2012) (testimony of Richard Svobodny, Deputy Att'y Gen.).

[30]     *Id.*

[31]     *Id.* at 695; *see also* AS 22.05.015(b) ("The supreme court may take jurisdiction of a case pending before the court of appeals if the court of appeals certifies to the supreme court that the case . . . involves an issue of substantial public interest that should be determined by the supreme court.").

sentence of imprisonment or a fine.[32]  In Alaska, a court's power to suspend a sentence of imprisonment and offer probation instead is entirely statutory.[33]  Our statutes give the sentencing court significant discretion to determine the appropriate period and conditions of probation.[34]

Because probation is an alternative to the statutorily defined punishment for the crime, we long ago recognized in *Brown v. State* that the defendant may refuse probation if the defendant "deems the terms too onerous."[35]  Since *Brown*, the court of

---

[32]     *See Chinuhuk v. State*, 472 P.3d 511, 515 (Alaska 2020) ("Alaska law usually permits a court to impose probation only in lieu of some other punishment."); AS 12.55.080 ("Upon entering a judgment of conviction of a crime, or at any time within 60 days from the date of entry of that judgment of conviction, a court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation for a period and upon the terms and conditions as the court considers best."); AS 12.55.090(a) ("Probation may be granted whether the offense under AS 11 or AS 16 or the crime is punishable by fine or imprisonment or both."); *accord Probation*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "probation" as a "court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison, [usually] on condition of routinely checking in with a probation officer over a specific period of time").

[33]     *See Pete v. State*, 379 P.2d 625, 626 (Alaska 1963) ("The power to suspend sentences is not inherent in the judicial branch of government; the power exists only when conferred upon the judiciary by the legislature.").

[34]     *See* AS 12.55.080 ("Upon entering a judgment of conviction of a crime . . . a court . . . may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation for a period and *upon the terms and conditions as the court considers best*." (emphasis added)).

[35]     559 P.2d 107, 111 n.13 (Alaska 1977) ("The statutes concerning probation contain no provision as to its acceptance or rejection.  However, it is settled that a defendant has the right to refuse probation, for its conditions may appear to defendant
(continued...)

appeals has expanded on this point, noting that probation is "an act of grace and clemency" that "was never intended to be a device for making a punishment more severe than that prescribed by the legislature."[36] "[P]robation is a contract, and because this contract allows a judge to control a defendant's life in ways that the defendant may deem more burdensome than normal criminal penalties, a defendant is free to refuse probation and to insist on a normal sentence."[37] Put simply, it is a defendant's "choice whether to accept a partially suspended sentence and the accompanying period of probation, or to insist on a sentence consisting wholly of time to serve."[38]

In *State v. Henry* the court of appeals again affirmed the right to reject probation, even if the defendant had previously entered into a Rule 11 plea agreement providing for a specific period of probation.[39] *Henry* was a consolidated appeal involving two defendants, each of whom had executed a Rule 11 plea agreement providing for a specific period of probation.[40] In each case the defendant served the

---

[35] (...continued)
more onerous than the sentence which might be imposed." (quoting with approval *In re Osslo*, 334 P.2d 1, 8 (Cal. 1958))).

[36] *State v. Staael*, 807 P.2d 513, 517 (Alaska App. 1991) (first quoting *People v. Franks*, 211 P.2d 350, 351 (Cal. App. 1949), then quoting *People v. Billingsley*, 139 P.2d 362, 364 (Cal. App. 1943)); *see also Sweezey v. State*, 167 P.3d 79, 80-81 (Alaska App. 2007) (refusing to overturn *Brown*); *Hurd v. State*, 107 P.3d 314, 333 (Alaska App. 2005) (affirming right to reject probation).

[37] *State v. Auliye*, 57 P.3d 711, 717 (Alaska App. 2002).

[38] *Hurd*, 107 P.3d at 333.

[39] 240 P.3d 846, 851 (Alaska App. 2010).

[40] *Id.* at 847.

active term of imprisonment and was released on probation.[41]  After violating probation and being remanded to custody on a petition to revoke probation, the defendants each asked the sentencing judge to impose active imprisonment for the remainder of their suspended sentence in lieu of any further probation.[42]  In each case the sentencing judge granted the request and applied the *Chaney* sentencing criteria to sentence the defendant to a term of active imprisonment that was less than the remaining suspended time provided for in the defendant's plea agreement, with no probation to follow.[43]

The State appealed these decisions, contending that the sentencing courts had no authority to reduce the period of probation provided for in the defendants' plea agreements without the State's consent.[44]  It argued that because the period of probation is a material element of a plea bargain, "the defendant necessarily relinquishes the right to later terminate their probation."[45]

The court of appeals rejected the State's argument.  It reasoned that parties to a contract "retain their legal rights relating to the transaction covered by the contract unless either (1) the contract specifically states that a party is relinquishing a legal right

---

[41]    *Id.*

[42]    *Id.*

[43]    *Id.*

[44]    *Id.* at 848.

[45]    *Id.* at 849.  Judge Allard accurately noted that the court of appeals' decision in *Henry* mistakenly characterized the State's position as allowing a defendant to reject probation but requiring either imposition of the remaining suspended time or rescission of the original plea agreement.  *Ray v. State*, 452 P.3d 688, 703 n.8 (Alaska App. 2019) (Allard, J., writing separately).  "[T]he State's primary position in *Henry* was that a defendant who agreed to probation as a bargained-for term of their plea agreement should not be allowed to unilaterally reject probation." *Id.*  The State's position in *Henry* is consistent with its interpretation of AS 12.55.090(f) in this case.

as part of the bargain or (2) the terms of the contract are clearly premised on the relinquishment of this right."[46] The court of appeals therefore concluded that a defendant's decision to accept a Rule 11 plea bargain does "not constitute a relinquishment or waiver of the normal rights accompanying a sentence of probation and suspended imprisonment."[47] Among the rights not waived are a defendant's "right to reject further probation at some future time and the right to demand (in that event) that the superior court assess their sentence of imprisonment based on the *Chaney* criteria, rather than automatically imposing all of their remaining suspended jail time."[48] For that reason, the court of appeals affirmed the lower court orders granting the defendants' requests to reject further probation and be sentenced to a term of active imprisonment only.[49]

B.  **According To The Plain Text Of AS 12.55.090(f), A Judge May Not Effectuate A Defendant's Right To Reject Probation Provided For In A Rule 11 Plea Deal.**

When probation has been imposed, the sentencing court generally "may revoke or modify any condition of probation or may change the period of probation."[50] The court of appeals ruled in *Henry* that the sentencing court retains this authority even

---

[46]  *Henry*, 240 P.3d at 849 (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998); *Metro. Edison Co. v. Nat'l Labor Relations Bd.*, 460 U.S. 693, 708 (1983)).

[47]  *Id.* at 851.

[48]  *Id.*

[49]  *Id.*

[50]  Former AS 12.55.090(b) (2012).

if the terms and conditions of probation are spelled out in a Rule 11 plea agreement.[51] But after *Henry*, the legislature amended Alaska's probation statutes to limit judicial authority in that context:

> Unless the defendant and the prosecuting authority agree at the probation revocation proceeding or other proceeding, the court may not reduce the specific period of probation, or the specific term of suspended incarceration except by the amount of incarceration imposed for a probation violation, if
>
> > (1) the sentence was imposed in accordance with a plea agreement under Rule 11, Alaska Rules of Criminal Procedure; and
> >
> > (2) the agreement required a specific period of probation or a specific term of suspended incarceration.[52]

We must decide whether this new statute precludes a defendant from exercising the right to reject probation provided for in a Rule 11 agreement. The interpretation of a statute is a question of law that we review de novo.[53]

"The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[54] "We interpret a statute 'according to reason, practicality, and common sense, considering the

---

[51]     *Henry*, 240 P.3d at 851.

[52]     Ch. 70, § 10, SLA 2012.

[53]     *Se. Alaska Conservation Council, Inc. v. Dep't of Nat. Res.*, 470 P.3d 129, 136 (Alaska 2020).

[54]     *City of Valdez v. State*, 372 P.3d 240, 254 (Alaska 2016) (quoting *City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173, 1178 (Alaska 1998)).

meaning of the statute's language, its legislative history, and its purpose.' "[55]  We use a sliding scale approach to statutory interpretation: "[T]he clearer the statutory language, the more convincing any contrary legislative history must be to overcome the statute's plain meaning."[56]  "[W]here a statute's meaning appears plain and unambiguous . . . the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent."[57]  "[I]f legislative history is [only] 'somewhat contrary' to the plain meaning of a statute, plain meaning still controls."[58]

The language of AS 12.55.090(f) plainly precludes a court from reducing periods of probation imposed pursuant to a Rule 11 agreement without the consent of both parties.  As Judge Allard observed, a defendant cannot as a practical matter exercise the right to reject probation already agreed to if the court may not reduce the period of probation.[59]  Because the text of AS 12.55.090(f) makes it impossible for a defendant to

---

[55]     *Vandenberg v. State, Dep't of Health & Soc. Servs.*, 371 P.3d 602, 606 (Alaska 2016) (quoting *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014)).

[56]     *Se. Alaska Conservation Council*, 470 P.3d at 141 (citing *City of Valdez*, 372 P.3d at 248).

[57]     *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 193 (Alaska 2007) (omission in original) (quoting *State v. Alaska State Emps. Ass'n/AFSCME Local 52*, 923 P.2d 18, 23 (Alaska 1996)).

[58]     *Hendricks-Pearce v. State, Dep't of Corr.*, 323 P.3d 30, 35-36 (Alaska 2014) (quoting *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 387 (Alaska 2013)).

[59]     *Ray v. State*, 452 P.3d 688, 702 (Alaska App. 2019) (Allard, J., writing separately); *see also Harris v. State*, 980 P.2d 482, 484-85 (Alaska App. 1999) (holding that a probationer has a duty to continue abiding by his probation conditions — even after a petition to revoke probation has been filed — until the probation has been revoked
(continued...)

exercise a right to reject probation, the text strongly suggests the legislature intended to abolish this right in these circumstances.

Ray argues that if the legislature meant to abolish the right to reject probation in these circumstances, then it would have said so in the statute's text. Because AS 12.55.090(f) does not mention the right to reject probation, Ray contends that it was meant to curtail only the trial court's authority to *unilaterally* change the terms of a defendant's previously-agreed-upon sentence.

Ray's approach to statutory interpretation is akin to the presumption against implied repeal, which we have rejected. The presumption against implied repeal is a rule of statutory construction providing that "[w]here a newly enacted statute is silent on a previous existing one, the indication is that the legislature did not intend to repeal the existing one."[60] We have declined to recognize a presumption against implied repeal of statutes because it "is artificial and potentially at odds with the primacy of legislative intent."[61] The legislature is not required to expressly state that it is repealing or modifying a statute in order to do so; instead, we apply normal tools of statutory construction to discern the legislature's intent.[62]

For the same reasons we reject the presumption against implied repeal, we

---

[59]     (...continued)
by the court).

[60]     1A NORMAN J. SINGER & J. D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 23:10 (7th ed. 2020). The rule is based on the theory "that the legislature is presumed to envision the whole body of the law when it enacts new legislation," so "drafters should expressly designate offending provision rather than leave a repeal to arise by implication from a later enactment." *Id.*

[61]     *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 516 (Alaska 1998).

[62]     *See id.* at 516-17.

cannot presume that the legislature did not intend the straightforward effect of the language it added to the probation statutes simply because the legislature did not expressly mention the right to reject probation. The right to reject probation, although not expressly mentioned in the text of the probation statutes, is derived from an interpretation of their purpose and operation.[63] With AS 12.55.090(f), the legislature amended the statute in a way that makes it impossible for a defendant to exercise that right if the defendant had previously agreed to a period of probation in a Rule 11 agreement. The fact that the legislature did not expressly mention the right to reject probation does not give us license to diminish the effect of the words it did use.[64]

---

[63] *See Brown v. State*, 559 P.3d 107, 111 n.13 (Alaska 1997) ("We . . . are of the view that under Alaska's statutes governing probation the defendant can refuse probation if he deems the terms too onerous."); *Pete v. State*, 379 P.2d 625, 626 (Alaska 1963) (noting that court's power to impose probation in lieu of imprisonment is a power granted to the legislature); *State v. Staael*, 807 P.2d 513, 517 (Alaska App. 1991) (relying on discretionary language in probation statutes to conclude that probation is "an act of grace and clemency" that "was never intended to be a device for making a punishment more severe than that prescribed by the legislature").

[64] The court of appeals has previously stated that "statutes are construed so as to preserve the pre-existing common law unless the legislature has clearly indicated its purpose to change that law," citing the rule that statutes in derogation of the common law are to be narrowly construed. *See, e.g.*, *State v. ABC Towing*, 954 P.2d 575, 579 (Alaska App. 1998); *Roeckl v. F.D.I.C.*, 885 P.2d 1067, 1074 (Alaska 1994) ("Courts construing these statutes have generally recognized that registration requirements are in derogation of the common law and therefore must be construed narrowly."). It seems doubtful that this interpretive principle applies to the right to reject probation, which stems from our interpretation of Alaska's probation statutes and is not a common law rule in the traditional sense. *See Common Law*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "common law" as "[t]he body of law derived from judicial decisions, rather than from statutes or constitutions"). Yet we need not decide that question. Even if the right to reject probation were a common law right, modification of that right would require only a clear change in the law, not an express statement of intent to change the

(continued...)

Ray's interpretation of AS 12.55.090(f) also violates a cardinal rule of statutory construction. He, like Judge Mannheimer, maintains that the statute does not bar defendants from exercising the right to reject probation but limits only "judges who unilaterally decide to terminate a recalcitrant defendant's probation because they are tired of dealing with the defendant."[65] But that limitation does not appear in the statute's text. The text does not distinguish between reducing a period of probation on the court's own motion and reducing probation on the defendant's motion. To limit the statute to the former category, the legislature would have needed to add the term "unilaterally," "sua sponte," or similar language: For example, "[u]nless the defendant and the prosecuting authority agree . . ., the court may not *unilaterally* reduce the specific period of probation . . . ." The legislature did not use this language, and "we are not vested with the authority to add missing terms" to a statute.[66]

---

[64]    (...continued)
law. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 318 (West 2012) ("[S]tatutes will not be interpreted as changing the common law unless they effect the change with clarity. . . . [T]he alteration of prior law must be clear — but it need not be express . . . ."). As we explain here, AS 12.55.090(f) effects a clear change in the law.

[65]    *Ray v. State*, 452 P.2d 688, 696 (Alaska App. 2019) (Mannheimer, J., writing separately) (emphasis omitted).

[66]    *M.M. ex rel. Kirkland v. State, Dep't of Admin., Off. of Pub. Advocacy*, 462 P.3d 539, 547 n.37 (Alaska 2020) (quoting *Mun. of Anchorage v. Suzuki*, 41 P.3d 147, 151 n.12 (Alaska 2002)).

The dissent suggests that we have slanted the rules of statutory interpretation against criminal defendants by requiring the legislature to use specificity when limiting judges' discretion but not when limiting defendants' rights. Not so. We apply the tools of statutory interpretation neutrally. In this case we presume the legislature intended the clear effect of the language it used, which plainly does not allow
(continued...)

Ray argues that if the legislature wanted to make probation mandatory, it would have enacted an entirely different type of mandatory probation, as it did for sex offenses and underage drinking.[67] These types of probation were meant only for specific crimes and imposed special conditions related to the distinct nature of those crimes.[68] It was therefore logical for the legislature to create a different type of probation. But nothing in our case law suggests that creating a new type of probation is the *only* way to bind a defendant to the probation provided for in a Rule 11 plea agreement. Targeting a sentencing court's authority to alter the terms of a Rule 11 plea agreement is a logical and precise way for the legislature to negate a defendant's right to refuse previously-agreed-upon probation.

The dissent acknowledges that Ray's attempt to distinguish between judges terminating probation sua sponte and judges terminating probation at the defendant's

---

[66] (...continued)
a judge "to reduce the specific period of probation" and does not contain language that distinguishes reducing the period of probation sua sponte from reducing it at the defendant's request.

[67] *See* former AS 12.55.125(o) (2006) (providing, before being repealed in 2016, for mandatory probation period for specific sex offenses); former AS 04.16.050(e) (2002) (providing, before being amended in 2007, that if judge orders probation the probationary period must be "for one year or until the person is 21 years of age, whichever is later").

[68] *See, e.g.*, *Chinuhuk v. State*, 472 P.3d 511, 519 (Alaska 2020) (recognizing that trial court has no discretion to reduce sex offender's mandatory period of probation after leaving prison below statutory minimums); *State v. Auliye*, 57 P.3d 711, 713 (Alaska App. 2002) (recognizing that legislature created alternative probation, which cannot be rejected, for minors convicted of possessing or consuming alcohol); *see also* *Staael*, 807 P.2d at 516-17 (recognizing that individuals released on mandatory parole do not have statutory right to refuse parole, whereas individuals released on probation have statutory right to refuse probation).

request is unpersuasive. Instead the dissent concludes, as did Judge Suddock, that AS 12.55.090(f) permits a judge to grant a defendant's request not to spend further time on probation so long as the judge imposes the balance of the defendant's term of active imprisonment. In other words, the judge may honor a defendant's right to reject probation but may not impose the term of active imprisonment that the judge believes appropriate in light of the constitutionally derived *Chaney* factors. Yet the text does not purport to limit a sentencing judge's discretion in this way. The statute says the judge "may not reduce the specific period of probation"; it does not say that the judge *must* impose the full term of active imprisonment.

When the text of AS 12.55.090(f) is considered without adding any words or applying inappropriate presumptions, it makes it impossible for a defendant to reject probation previously agreed to in a Rule 11 plea bargain. Ray "bears [the] . . . heavy burden of demonstrating contrary legislative intent" to prove that the legislature did not intend this result.[69]

C. **The Legislative History Is Susceptible To Different Interpretations And Therefore Does Not Refute The Plain Meaning Of The Statute.**

The legislative history, as Ray acknowledges, is somewhat ambiguous. Neither legislators nor witnesses referred specifically to the "right" to reject probation, and much of the testimony focused on judges' actions, rather than defendants'. Yet it is significant that the testimony by the legislation's proponents and the bill review materials evince an intent to overrule *Henry*. If that was the legislature's intent, it seems doubtful that the legislature intended to address only instances in which a judge "unilaterally" reduces a defendant's period of probation, but not instances in which a judge reduces

---

[69]   *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 193 (Alaska 2007) (quoting *State v. Alaska State Emps. Ass'n/AFSCME Local 52*, 923 P.2d 18, 23 (Alaska 1996)).

probation at the defendant's urging — the situation actually presented in *Henry*.[70] The legislative history therefore can be read to support the plain meaning of AS 12.55.090(f)'s text and at the very least does not clearly refute it.

### 1. Witness testimony

All court of appeals judges relied on testimony to the legislature about the proposed statute — notably from Deputy Attorney General Richard Svobodny and Assistant Attorney General Anne Carpeneti, two representatives sent by the Department of Law to explain the meaning of the proposed statute. The three judges disagreed on what this testimony reveals about legislative intent.

Assistant Attorney General Anne Carpeneti and Deputy Director of the Public Defender Agency Douglas Moody testified before the Senate Judiciary Committee on February 10, 2012 to discuss S.B. 186, a bill amending various aspects of the code of criminal procedure.[71] During this hearing Carpeneti spoke at length about sections 5 and 6 of S.B. 186, which had the same language as AS 12.55.090(f).[72] Carpeneti testified that Sections 5 and 6 "deal[] with a decision made by the [c]ourt of [a]ppeals in *Henry v. State*," which was "a case that [the Department of Law thought]

---

[70] 240 P.3d 846, 847 (Alaska 2010) ("[D]efendant[s] told the sentencing judge that they no longer wished to be on probation: they asked the judge to terminate the probation and simply sentence them to an active (i.e., unsuspended) term of imprisonment.").

[71] Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[72] Testimony of Anne Carpeneti, Assistant Att'y Gen. at 1:51:48-1:57:48, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

was mistakenly decided by that court."[73]  With regard to *Henry*, Carpeneti testified:

> [The Department of Law] agree[s] . . . with this part of [*Henry*] that the court should look to the sentencing criteria in *Chaney* to determine how much time should then be imposed for the probation violation but we don't agree with the decision of the court to unilaterally end probation and reduce the period of suspended time.[74]

Senator Joe Paskvan asked Carpeneti why the situation in *Henry* was even a problem.[75]  Carpeneti responded:

> [In *Henry*], the sentence was three years probation and 19 months of suspended jail time.  He said he didn't want to be on probation and he had agreed to it.  You know, he had said when he entered the plea agreement that he would serve three years of probation and he got a substantial benefit.  Three serious charges were dismissed in exchange for his agreement to serve three years probation.  He didn't like probation and so he . . . asked the court to eliminate probation and send him back to jail.  Well, you know, if you had sent him back to jail for 19 months, as the original bargain had been, . . . that would have been fine because at that point, he had served everything that he had agreed to and there wasn't . . . much point after that for him to be on probation but the judge not only reduced the time that he had agreed to but also suspended any probation after that.  So, . . . I suppose if the judge had said I'm going to send you to jail for 15 months, you'll still have four months and . . . whatever's left of probation, that would have been fine but the judge not only reduced the amount of time that was suspended and to serve

---

[73]     *Id.*

[74]     *Id.*

[75]     Comments of Sen. Joe Paskvan at 2:04:17-2:12:03, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

but unilaterally eliminated the rest of the probation.[76]

Deputy Director of the Public Defender Agency Douglas Moody testified in opposition to the law. He observed that the right to reject probation was not newly created in *Henry*.[77] He also remarked that

> there are sort of multitudes of reasons why guys don't want to finish out on probation, the least common of which is I just want to drink all the time. Far more common is I want to move to a different part of the state because I can find work. . . . [S]ome guys just don't want to be on probation. They don't want to be stuck in Anchorage. They want to go back to a village or something like that. So you have all these other reasons why somebody might . . . not want to be on probation anymore but . . . the way the law is now and has been for a long time is that the judge just comes in and determines what is a fair and just sentence given the entire scope of conduct and, frankly, usually that means the guy gets everything. . . .
>
> And now you've . . . potentially got a problem here and stripping the court . . . of that discretion to review — (cut off by Senator Hollis French)[78]

Senator Hollis French clarified what he thought the amendment was doing:

> [T]he judge is always free to say you know what, in the totality of circumstances, I think it's worth X many days of the suspended time but what he can't do is say I've decided that the suspended time imposed in the first place was too

---

[76] Testimony of Anne Carpeneti, Assistant Att'y Gen. at 2:05:15-2:06:39, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[77] Testimony of Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:36:45-2:50:20, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[78] *Id.*

much and eliminate it.[79]

Moody confirmed that this was exactly what he thought the provision was saying.[80] Moody's explanation of his agency's opposition to the bill — the legitimate reasons why defendants sometimes "don't want to finish out on probation" — is significant because that is the interest protected by the right to reject probation. The agency's opposition suggests a belief that the bill was targeted at eliminating that right, not targeted solely at judges terminating probation without regard to the defendant's wishes.

Carpeneti testified again before the House Judiciary Committee on April 11, 2012, this time about S.B. 210, the successor to S.B. 186 that eventually became law.[81] Sections 9 and 10 of S.B. 210 contained the same language as sections 5 and 6 of S.B. 186. Carpeneti again discussed *Henry* and the Department of Law's opposition to the court of appeals' ruling in that case:

> The *Henry* decision . . . allowed the court to reduce the period
> of probation in that case and these provisions . . . would
> disallow a reduction in those unless both parties agreed to
> that change and the reason is that when the state and the
> defense enter into plea negotiations, both sides give up some
> things and gain some things and the state gives up often
> additional charges that could be brought and various other

---

**79** Comments of Sen. Hollis French., Chair, Sen. Judiciary Comm. at 2:46:40-2:47:01, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

**80** Testimony of Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:36:45-2:50:20, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

**81** Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 11, 2012); *compare also* Sen. Judiciary Comm., Sectional Analysis of Proposed S.B. 186, 27th Leg., 2d Sess. (2012), *with* Sen. Judiciary Comm., Sectional Analysis of Proposed S.B. 210, 27th Leg., 2d Sess. (2012).

things in exchange for a particular agreement. . . . [The Department of Law] opposed [the outcome in *Henry*] because, first of all, [Henry] had agreed to that amount of time and, second . . . we had reasons for requiring a period of probation, for the protection of the public.[82]

In response to questions from legislators, Carpeneti clarified that she believed there had been a bargain struck between the State and the defendant, which the court approved. She stated:

> [The Department of Law's] position is that, yes, . . . the court should look at the *Chaney* criteria to decide what effect . . . this violation of probation should have but it shouldn't reduce the period of probation that the defendant has bargained on and the [S]tate has bargained on and has agreed to.
>
> . . . .
>
> [T]he parties bargained on this period of probation. The court accepted . . . that bargain before sentencing the defendant and the defendant has violated the condition of probation. We do agree that the court should apply the *Chaney* criteria in evaluating the consequences of the probation violation and whether or not any additional time should be imposed on the defendant or not but in terms of the agreement that was originally made, we believe that . . . would be upheld.
>
> . . . .
>
> [The State] ha[s] dropped charges which [it is] no longer in a position to reinstate. The defendant has violated the conditions of his probation. The court, under the circumstances, should not be able to reduce the terms that were already agreed upon by the parties for what is a

---

[82] Testimony of Anne Carpeneti, Assistant Att'y Gen. at 1:37:13-1:47:50, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 11, 2012).

violation of probation.[83]

Deputy Attorney General Richard Svobodny testified on S.B. 210 the following day, remarking that the amendment was "a deal is a deal section" and criticized *Henry* for undermining the integrity of the Rule 11 agreement and a victim's ability to obtain restitution:

> [W]hat the decisions in the last year had said is, basically, the judge can say okay, . . . you went out and you violated the law, that was a violation of your conditions of probation but I'm not going to do anything and I'm going to just say that what you've done now is it. And so it seems to me it violates kind of all those principles, at least the prosecutors, hopefully, have about fairness, justice, and protecting the community . . . .[84]

Svobodny also emphasized that victims of crime have a constitutional right to restitution and that the period of probation in a plea agreement is often negotiated with an eye to obtaining that restitution.[85] He observed that if a judge decides to eliminate the period of probation, the defendant's incentive to pay restitution is gone and the victim's only recourse is a civil suit.[86]

Snippets of this testimony can be read to support Judge Mannheimer's, Judge Suddock's, or Judge Allard's interpretation of the statute, so the testimony is ultimately not a decisive guide to legislative intent. As Ray points out, the testimony by the Department of Law representatives does not explicitly mention the right to reject

---

[83] *Id.*

[84] Testimony of Richard Svobodny, Deputy Att'y Gen. at 2:20:00-2:37:10, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 12, 2012).

[85] *Id.*

[86] *Id.*

probation at all. And Carpeneti at one point described a judge "unilaterally eliminat[ing] the rest of the probation."[87] Judge Mannheimer emphasized this point, noting much of the discussion centered around the Department of Law's frustrations with "the problem of *judges*" changing the terms of Rule 11 plea agreements.[88] Svobodny's testimony in particular focused on a perceived fecklessness of judges who acknowledge a probation violation but decide "I'm not going to do anything and I'm going to just say that what you've done now is it."[89] This focus can be read to support Ray's (and Judge Mannheimer's) interpretation of AS 12.55.090(f).

But the focus on judges abrogating the terms of a Rule 11 agreement does not rule out an intent to prevent judges from doing so at the behest of the defendant. As Judge Suddock pointed out, "nothing in the testimony of the two State's witnesses suggested that, under the State's proposed remedial legislation, a court could ever act *inconsistently* with the original plea agreement."[90] He noted that Carpeneti's "clear point was that the original plea agreement should always remain inviolate whenever a judge sentences a probationer, and accordingly that [the court of appeals'] holding to the

---

[87] Testimony of Anne Carpeneti, Assistant Att'y Gen. at 2:04:17-2:12:03, Hearing on S.B. 186 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[88] *Ray v. State*, 452 P.3d 688, 698 (Alaska App. 2019) (Mannheimer, J., writing separately) (emphasis in original).

[89] Testimony of Richard Svobodny, Deputy Att'y Gen. at 2:20:00-2:37:10, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 12, 2012).

[90] *Ray*, 452 P.3d at 700 (Suddock, J., writing separately) (emphasis in original); *id.* at 701 ("Surely the Department of Law did not trouble itself to draft legislation to remedy a situation that rarely occurs — arbitrary judicial reductions in probationers' sentences — only to leave intact the holding of the case with which it expressly disagreed, *Henry*.").

contrary in *Henry* should be overruled."[91] Carpeneti's and Svobodny's April 2012 testimony emphasizes that AS 12.55.090(f) was designed to ensure that "a deal was a deal," not just because it is a contract, but because the terms of the agreement — notably the charges that were pleaded to and the corresponding sentence and probation terms — were negotiated in the interest of justice and public protection. This logic applies with equal force to a judge who sua sponte reduces a previously-agreed-upon period of probation and a judge who reduces a previously-agreed-upon period of probation at the defendant's request.

And because Carpeneti's and Svobodny's testimony was centered around *Henry* — which involved defendants who exercised their right to reject probation, not judges who unilaterally eliminated the defendants' probation — Judge Mannheimer's theory that the legislation was targeted only at wayward judges is suspect. It seems doubtful that the Department of Law drafted legislation in response to a specific case but did not intend to address the particular situation presented in that case. The focus on overturning *Henry* suggests the legislature intended to prevent a defendant from exercising the right to reject previously-agreed-upon probation.

Legislative testimony does not favor Judge Suddock's interpretation either. The dissent, in adopting Judge Suddock's interpretation, focuses on testimony about the importance of "the deal," which was a theme of the legislation. And the dissent highlights some of Carpeneti's testimony, which can be read to support Judge Suddock's view that a defendant retains the right to reject further probation but must serve all remaining suspended time.[92] Carpeneti testified that, if a defendant had 19 months of

---

[91]    *Id.*

[92]    This interpretation would mean that a judge would be required to impose a sentence of active imprisonment without regard to the *Chaney* criteria. Because the

(continued...)

suspended time when he rejected probation, and the judge "had sent him back to jail for 19 months, as the original bargain had been, . . . that would have been fine because at that point, he had served everything that he had agreed to and there wasn't . . . much point after that for him to be on probation."[93]  Read in isolation, this testimony could suggest that the Department of Law was not concerned with the right to reject probation, so long as the remainder of the suspended sentence was served.

Yet the majority of Carpeneti's testimony suggests that it is proper for a judge sentencing for a probation violation to apply the *Chaney* criteria and decide that a sentence of imprisonment equivalent to the full remaining suspended time is appropriate; what is not proper is "eliminat[ing] the rest of the probation."[94]  Carpeneti indicated at least three times that, under this legislation, the judge sentencing for

---

[92]  (...continued)
*Chaney* criteria are derived from the constitution, *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), Judge Suddock's interpretation poses the interesting question of whether a judge may disregard constitutional principles of criminal sentencing when sentencing a defendant to a term of *active* imprisonment because the defendant had previously agreed to that period of *suspended* imprisonment in a plea deal.  For this reason, Ray himself rejects Judge Suddock's interpretation, describing it as an "unreasonable compromise that is not supported by the language of the statute" and that creates an "irreconcilable conflict" with the Alaska constitution.  Because we conclude Judge Suddock's interpretation is not what the legislature intended, we need not address this question.  Although the dissent adopts Judge Suddock's interpretation, it does not address this constitutional issue.

[93]  Testimony of Anne Carpeneti, Assistant Att'y Gen. at 2:04:17-2:12:03, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012)

[94]  *Id.*

probation violations would have to apply the *Chaney* criteria.[95]  This view of the legislation is consistent with the Department of Law's own review of the legislation emphasizing that a judge "must still apply the *Chaney* criteria, AS 12.55.005, in deciding how much, if any, of the suspended period of incarceration should be imposed for the probation violation."[96]

Similarly, the dissent's emphasis on the "deal" theme in the exchange between Senator French and Deputy Director of the Public Defender Agency Moody overlooks the fact that Moody confirmed French's view that legislation left sentencing judges "free to say . . . in the totality of circumstances, I think it's worth X many days of the suspended time."[97]  This exchange indicates a belief that judges, when sentencing for probation violations under this legislation, would continue to apply the *Chaney*

---

[95]    Testimony of Anne Carpeneti, Assistant Att'y Gen. at 1:55:51-1:56:04, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012) (stating Department of Law "agree[s] . . . with this part of [*Henry*] that the court should look to the sentencing criteria in *Chaney* to determine how much time should then be imposed for the probation violation"); Testimony of Anne Carpeneti, Assistant Att'y Gen. at 1:39:54-1:40:07, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 11, 2012) (describing Department's position that "the court should look at the *Chaney* criteria to decide what effect . . . this violation of probation should have but it shouldn't reduce the period of probation"); *id.* at 1:41:54-1:42:07 ("We do agree that the court should apply the *Chaney* criteria in evaluating the consequences of the probation violation and whether or not any additional time should be imposed on the defendant or not . . . .").

[96]    Letter on S.B. 210 from Michael C. Geraghty, Att'y Gen., to Governor Sean Parnell (Apr. 23, 2012).  We have previously ruled it is proper to rely on a bill transmittal letter by the governor in analyzing legislative history.  *State v. Fyfe*, 370 P.3d 1092, 1097-98 (Alaska 2016).

[97]    Exchange between Sen. Hollis French, Chair, Sen. Judiciary Comm., and Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:46:47-2:47:44, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

criteria rather than simply impose the balance of suspended time. This consistently voiced interpretation is most likely what the legislature intended.

### 2. Documentary evidence of legislative intent

In addition to testimony, we consider other sources of legislative history that shed light on the intent behind AS 12.55.090(f). In February 2012, SB 186 was introduced and referred to the Senate Judiciary Committee. The sponsor statement for the bill from the Judiciary Committee provided that:

> [S.B. 186] . . . clarifies that neither the prosecuting attorney nor the defendant can, without mutual agreement, change the terms of a Rule 11 plea agreement under the Rules of Criminal Procedure after it has been imposed, and that the court may not reduce a period of probation agreed to under a Rule 11 agreement without the consent of the prosecution.

> [S.B.] 186 makes important changes to ensure that Alaska's criminal procedures comply with Supreme Court decisions, and that plea agreements made in good faith are upheld by the courts. The bill is supported by the Alaska Department of Law.[98]

Sections 5 and 6 of S.B. 186 contained the precise language that was codified in AS 12.55.090(f). The purpose of this language, according to the Senate Judiciary Committee's sectional analysis of the bill, was:

> to ensure that neither the prosecuting authority nor the defendant can, without mutual agreement, change the terms of a Rule 11, Alaska Rules of Criminal Procedure, agreement after it has been imposed. If a defendant, as part of a plea agreement under Rule 11, agrees to a particular period of probation the court may not, without the consent of the prosecution, reduce the period of probation. *This has the effect of overruling the decision in* State v. Henry, 240 P.3d

---

[98] Sen. Judiciary Comm., Sponsor Statement on S.B. 186, 27th Leg., 2d Sess. (2012).

846 (Alaska App. 2010). Judges, in sentencing a person who has violated a condition of probation, must still apply the *Chaney* criteria in deciding how much, if any, of the suspended period of incarceration should be imposed. However, the court may not reduce the period of probation or the period of suspended time (less the time imposed for the probation violation) without the agreement of the prosecuting authority.[99]

This sectional analysis suggests an intent to eliminate the right to reject probation in two ways. First, it confirms the intent to overrule *Henry*. And second, it expressly states that a defendant cannot back out of agreed-upon probation: "[N]either the prosecuting authority nor the defendant can, without mutual agreement, change the terms of a Rule 11 . . . agreement after it has been imposed." This analysis therefore undercuts Judge Mannheimer's interpretation. It also undercuts Judge Suddock's interpretation because it emphasizes that the judge must apply the *Chaney* factors in deciding how much active imprisonment to impose for the probation violation.

S.B. 186 did not make it out of committee, but the same language used in sections 5 and 6 of S.B. 186 was used in sections 9 and 10 of S.B. 210.[100] The sectional analysis of sections 9 and 10 was different than the sectional analysis of sections 5 and 6 of S.B. 186:

New Section 9 and 10 provides that when a defendant enters into a plea agreement that calls for a specific term of probation or a specific term of suspended incarceration, the court, in a probation revocation proceeding, cannot unilaterally terminate or reduce those terms, except by the amount of incarceration time imposed for the offense that is

---

[99]    Sen. Judiciary Comm., Sectional Analysis of Proposed S.B. 186, 27th Leg., 2d. Sess. (2012) (emphasis added).

[100]    *Compare id.*, *with* Sen. Judiciary Comm., Sectional Analysis of Proposed S.B. 210, 27th Leg., 2d Sess. (2012).

the basis of the probation violation.

> When a court imposes sentence for a probation violation in these cases, the court is not obligated to impose the full amount of remaining suspended time, but rather must consider the nature of the probation violation in light of applicable sentencing law and impose an appropriate sentence, subject to the caveat that its authority to impose an appropriate sentence does not include the authority to terminate or reduce the term of probation or the suspended term of imprisonment.[101]

This analysis did not mention overruling *Henry*, and it referred to judges "unilaterally" terminating or reducing periods of probation. Ray highlights these differences and argues that the sectional analysis "fails to articulate or even fairly imply that the proposed legislation would have the effect of eliminating a defendant's right to reject probation."

Although differences in the sectional analysis of S.B. 210 could suggest the legislature intended this bill to do something different than S.B. 186 despite using the same text, that inference is undercut by the Department of Law's bill review of S.B. 210,[102] which echoes the original description of S.B. 186:

> [S.B.] 210 would adopt a provision that limits a court's ability to change the terms of a plea negotiated by the prosecution and the defense under Rule 11, Alaska Rules of Criminal Procedure and accepted by the court at sentencing. If the parties agreed to a specific term of probation or a specific term of suspended incarceration in the negotiated plea, the court later at a probation revocation proceeding could not reduce the agreed upon terms, except to the extent

---

[101] Sen. Judiciary Comm., Sectional Analysis of Proposed S.B. 210, 27th Leg., 2d Sess. (2012) (emphasis omitted).

[102] *See State v. Fyfe*, 370 P.3d 1092, 1097-98 (Alaska 2016) (accepting court of appeals' reliance on governor's transmittal letter in legislative history analysis).

that the court imposes a period of incarceration for the probation violation. This has the effect of overruling a decision by the court of appeals in *State v. Henry and Fulton*, 240 P.3d 846 (Alaska App. 2010). Judges, in sentencing a person who has violated a condition of probation, must still apply the *Chaney* criteria, AS 12.55.005, in deciding how much, if any, of the suspended period of incarceration should be imposed for the probation violation. The parties may agree to a change in the terms, but without the agreement of the defense and prosecution, the court may not order a change.[103]

The reference to *Henry* and the absence of the term "unilateral" tend to support the inference that the legislature intended to prevent a judge from reducing a previously-agreed-upon period of probation in all situations, whether on the judge's own initiative or at the defendant's request. And the reference to *Chaney* again refutes the view that the judge must instead sentence the defendant to serve the full balance of suspended time. Even so, the written analyses of the bill do not give us a crystal clear understanding of legislative intent.

As previously noted, "[w]here a statute's meaning appears plain and unambiguous . . . the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent."[104] The plain text of the statute gives a judge no power to alter probation contained in a Rule 11 agreement unless both the prosecution and defendant agree. This makes it impossible for a judge to honor defendants' rights, recognized in *Henry*, to reject probation contained in their Rule 11

---

[103] Letter on S.B. 210 from Michael C. Geraghty, Att'y Gen., to Governor Sean Parnell (Apr. 23, 2012).

[104] *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 193 (Alaska 2007) (alterations in original) (quoting *State v. Alaska State Emps. Ass'n/AFSCME Local 52*, 923 P.2d 18, 23 (Alaska 1996)).

agreements. Although portions of the legislative history can be read in different ways, much of it suggests an intent to overrule *Henry*. The legislative history therefore fails to convince us that the legislature did not intend the effect of the terms it used in AS 12.55.090(f): that a judge may not reduce a period of probation unless the prosecution agrees, even if the defendant wants the judge to do so.

### D. Abolishing A Defendant's Right To Reject Probation Provided For In A Rule 11 Agreement Is A Plausible Legislative Purpose.

When interpreting a statute, we consider not only its text and legislative history, but also common sense and legislative purpose.[105] Ray points to a practical problem to argue that the legislature did not really mean to abolish defendants' right to reject probation provided for in their Rule 11 agreements. A defendant can still functionally reject probation by immediately violating the terms of probation upon each release and being quickly sent back to prison. The potential futility of preventing a defendant from rejecting probation is, Ray argues, a reason to think the legislature did not mean to do so.

We are not persuaded. The parole statutes supply a counterpoint to Ray's argument. The legislature has adopted a system of mandatory parole as "a mechanism for achieving the rehabilitative goal of sentencing by helping offenders reintegrate into society."[106] Defendants who do not wish to be on parole or abide by parole conditions can defeat this goal by violating their parole conditions immediately upon release. Presumably the legislature was aware of this dynamic but nevertheless chose to make no

---

[105] *Vandenberg v. State, Dep't of Health & Soc. Servs.*, 371 P.3d 602, 606 (Alaska 2016).

[106] *State v. Shetters*, 246 P.3d 332, 336 (Alaska App. 2010) (quoting *State v. Staael*, 807 P.2d 513, 518 (Alaska App. 1991)); *see also* AS 33.16.010 (providing for mandatory parole); AS 33.20.040 (providing for mandatory parole based on good time credits).

exception for those who do not wish to abide by conditions of parole. Despite the differences between mandatory parole and probation, it is plausible to think that the legislature made a similar choice here: to preclude defendants from rejecting probation provided for in their Rule 11 agreements even though some defendants might functionally reject probation by violating their conditions immediately upon release. Perhaps the legislature hoped that even a defendant who wished to reject probation might, upon giving it another go, have a change of heart. But even if not, precluding a defendant from rejecting further probation ensures that such a defendant will still (eventually) serve the full period of imprisonment agreed to in the plea deal, which was not true under *Henry*.[107]    Therefore we reject Ray's suggestion that interpreting AS 12.55.090(f) to eliminate a defendant's right to reject probation is pointless and an implausible interpretation of legislative intent.[108]

***

Having considered the text, legislative history, and purpose of AS 12.55.090(f), we agree with Judge Allard that the statute does not permit a defendant to reject probation provided for in a Rule 11 agreement unless the prosecution agrees. Rather, the statute requires the judge to apply the *Chaney* criteria to sentence the defendant for the probation violation. The judge may impose the balance of the

---

[107]    240 P.3d 846, 851 (Alaska App. 2010) ("[T]he superior court did not commit error when it allowed the defendants to reject further probation, and when it sentenced the defendants to less than the full amount of their suspended jail time.").

[108]    In light of our analysis, Ray's reliance on the rule of lenity is unavailing. The rule of lenity "comes into play only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous." *Mun. of Anchorage v. Brooks*, 397 P.3d 346, 349 (Alaska App. 2017) (quoting *De Nardo v. State*, 819 P.2d 903, 907 (Alaska App. 1991)). In this case, we are able to discern the legislature's intent by applying the normal rules of statutory construction, so the rule of lenity does not come into play.

defendant's remaining term of active imprisonment if warranted by the *Chaney* criteria, but is not required to do so.[109]

## IV. CONCLUSION

We REMAND this case to the court of appeals for further proceedings consistent with this opinion.

---

[109] Ray argues in the alternative that the prosecutor in his case actually agreed to his request to serve no further probation, so AS 12.55.090(f) does not bar the judge from honoring that request. The court of appeals did not address this argument in its opinion and certified to us only the question of how AS 12.55.090(f) is to be interpreted. We address only the certified question and express no opinion on Ray's alternative argument.

CARNEY, Justice, dissenting.

I agree with the court that this case presents a terribly close question, as demonstrated by each of the court of appeals judges' separate opinions. But I respectfully dissent from the court's decision that former AS 12.55.090(f) abrogates a defendant's right to reject probation and serve a sentence of imprisonment without further probation.[1]

I agree with the court and all of the court of appeals judges that the legislature passed former AS 12.55.090(f) in reaction to the court of appeals' decision in *Henry v. State*.[2] I also agree with the court that the legislature's "focus on judges abrogating the terms of a Rule 11 agreement does not rule out an intent to prevent judges from doing so at the behest of a defendant"[3] — which, as the court notes, was precisely the situation in *Henry*.

Where I differ with the court, and Judges Allard and Mannheimer, is regarding which aspect of *Henry* the legislature targeted. I agree with Judge Suddock that the legislature intended to abrogate a defendant's right to get a "better deal" than the one the defendant had reached with the prosecution.[4] For this reason I agree with

---

[1]    Opinion at 1-2.

[2]    240 P.3d 846 (Alaska App. 2010); *see also* Opinion at 13, 19-20 (explaining former AS 12.55.090(f) evinced an intent to legislatively overrule *Henry*).

[3]    Opinion at 26.

[4]    I agree in large part with Judge Mannheimer's analysis, which in many ways parallels Judge Suddock's. But I disagree with his conclusion that a defendant remains entitled to a new *Chaney* evaluation of the appropriate amount of time to be imposed after the defendant rejects further probation. *See Ray v. State*, 452 P.3d 688, 696-99 (Alaska App. 2019) (Mannheimer, J., writing separately). It is because the new evaluation allowed the *Henry* defendants to obtain a "better deal" than they had

(continued...)

Judge Suddock that former AS 12.55.090(f) limited, rather than abolished, a defendant's right to reject probation if the defendant had entered into a Rule 11 plea agreement with the State.[5]

I also disagree with the court's textual analysis of AS 12.55.090(f). If the practical effect of the statute "makes it impossible for a defendant to reject probation previously agreed to in a Rule 11 plea bargain," what then follows?[6] Does the statute, à la *Chinuhuk,* create a new type of probation untethered from a suspended portion of a sentence of imprisonment?[7] It seems to me that if the legislature intended to make it impossible for a defendant to be released from probation, it would have said so.[8] I am not persuaded that this is "the straightforward effect" of the statute: if the text were

---

[4]    (...continued)
bargained for that the legislature passed former AS 12.55.090(f).

[5]    *See Ray*, 452 P.3d at 701 (Suddock, J., writing separately).

[6]    Opinion at 19.

[7]    *See, Chinuhuk v State,* 472 P.3d 511 (Alaska 2020).

[8]    At one point the court states that the legislature need "not expressly mention the right to reject probation" to abrogate it so long as the operation of the plain text is clear. Opinion at 16. But in the next paragraph the court rejects Judge Mannheimer's plain text argument that the statute addresses only the sentencing court's discretion, *Ray*, 452 P.3d at 696 (Mannheimer, J., writing separately), because the legislature did not expressly mention the superior court's right to "*unilaterally* reduce the specific period of probation." Opinion at 17 (emphasis in original). The rule the court seems to adopt is that when the legislature seeks to reduce the rights of criminal defendants it need not be specific, but when it seeks to limit the discretion afforded to a judge it must do so with precision. The rule of lenity requires that we adopt the opposite presumption. *See Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 97-98 (Alaska 2012) ("The rule of lenity provides: 'If a statute establishing a penalty is susceptible of more than one meaning, it should be construed so as to provide the most lenient penalty.' " (quoting *State v. Andrews*, 707 P.2d 900, 907 (Alaska App. 1985))).

"straightforward," I doubt that each court of appeals judge would have written a separate opinion.[9]

My second disagreement is with the court's dismissal of the contrary conclusions reached by Judges Mannheimer and Suddock because they cite "[s]nippets of [legislative] testimony."[10] I do not disagree that one could select "snippets" to support each of the three conclusions reached by the court of appeals.[11] But it is clear from the legislative testimony of representatives from both the Department of Law and the Public Defender Agency that the statute took aim at preventing an abrogation of "the deal"[12]

---

[9] The court's opinion is premised on the notion that the "straightforward effect of the" statute is clear. Opinion at 16. Given that two other reasonable interpretations have been identified, however, the court is really arguing that its selection of one of the three "plausible" interpretations of the statute is clearer than the others. Opinion at 34-35. But the rule of lenity is not satisfied, and a statute does not become unambiguous, merely because we believe we have found a more plausible interpretation. We must also determine that the statute is not "susceptible to multiple reasonable interpretations." *Ward*, 288 P.3d at 97. If the statute is reasonably susceptible to more than one interpretation, then the statute is ambiguous and "it should be construed so as to provide the most lenient penalty." *Id.* at 97-98. Even if I agreed with the court's interpretation, I could not say that the other interpretations are unreasonable. I therefore agree with Judge Mannheimer that "the meaning of the statute is, at best, ambiguous," *Ray*, 452 P.3d at 697, which cuts against the severe interpretation advanced by the court.

[10] Opinion at 25.

[11] *Id.* ("Snippets of [the] testimony can be read to support Judge Mannheimer's, Judge Suddock's, or Judge Allard's interpretation of the statute . . . .").

[12] *See* Testimony of Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:41:00, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012) (referring to plea agreement as "the deal"); Testimony of Richard Svobodny, Deputy Att'y Gen. at 2:21:00-2:24:59, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 12, 2012) (describing former AS 12.55.090(f) as "kind of a deal is a deal section"); Testimony of Anne Carpeneti,
(continued...)

reached to resolve a case. The Department of Law supported, and the Public Defender Agency opposed, the statute's erasure of defendants' right to reject probation and get a "better deal" than they bargained for.

The Department of Law worked with legislators in two sessions to introduce bills to ensure that neither judges who were "tired of"[13] particular defendants nor defendants who tired of probation could change "the deal" that had been embodied in a Rule 11 agreement.[14] The Public Defender Agency opposed the bills precisely because they would alter defendants' right, recently reaffirmed in *Henry*, to reject probation, request to serve only a period of imprisonment, *and* to have that period of probation calculated anew based on a reconsideration of the *Chaney* criteria.

After her presentation to the legislature about the Department of Law's disagreement with *Henry*, Assistant Attorney General Anne Carpeneti answered a clarifying question from a senator.[15] Importantly, she told the senator that if the judge

---

[12]    (...continued)
Assistant Att'y Gen. at 1:53, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 11, 2012) ("The parties bargained on this period of probation. The court accepted that . . . bargain. And the defendant has violated [it]. In terms of the original agreement that was made, that [should] be upheld."); Testimony of Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:26:00, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 11, 2012) ("Most of these sentences are negotiated and what happens is the state gives up something and the defense gives up something. . . . [But] [i]t's not an equal bargaining position.").

[13]    Testimony of Richard Svobodny, Deputy Att'y Gen. at 2:31:00-2:33:59, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 12, 2012).

[14]    *See, e.g.*, *id.* at 2:34:00 (describing right to reject probation by serving remaining suspended sentence as "kind of a reward for doing something bad").

[15]    Comments of Sen. Joe Paskvan at 2:04:17-2:12:03, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

"had sent [Henry] back to jail for 19 months, as the original bargain had been, . . . that would have been fine because at that point, he had served everything he had agreed to."[16]

Douglas Moody, deputy director of the Public Defender Agency, testified after Carpeneti in opposition.[17] A different senator clarified his understanding of the bill, that it would mean a judge "can't . . . say I've decided that the suspended time imposed in the first place was too much and eliminate it."[18] Moody confirmed that "is exactly what this provision does is say the judge can't [reduce the suspended sentence]" and that was why his agency opposed it.[19]

Additional testimony from representatives of both agencies was consistent with this view. Both focused on the proposed law's impact on the deal originally reached to resolve the case.[20] And both agencies' positions centered on whether "a court

---

[16] Testimony of Anne Carpeneti, Assistant Att'y Gen. at 2:05:15-2:06:39, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[17] Testimony of Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:36:45-2:50:20, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[18] Comments of Sen. Hollis French., Chair, Sen. Judiciary Comm. at 2:46:40-2:47:01, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[19] Testimony of Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:47, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Feb. 10, 2012).

[20] *See, e.g.*, Testimony of Richard Svobodny, Deputy Att'y Gen. at 2:21:21-29, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 12, 2012) ("Both sides have negotiated in good faith over what is an appropriate sentence in [a given] case. . . . [The prosecution] made a deal. [It] thought . . . [the deal] was negotiated in good faith, and the only thing that has happened . . . is the [probationer] has

(continued...)

could ever act *inconsistently* with the original plea agreement."[21]

Like Judge Suddock, I conclude that when it passed former AS 12.55.090(f), the legislature intended to prevent a court from doing anything inconsistent with the original deal.[22] Like Judge Suddock and Judge Mannheimer, I conclude that the legislature did not intend to abolish a defendant's right to reject further probation. And like Judge Suddock, I conclude that former AS 12.55.090(f) set the "price" for such a rejection of probation: service of the entire remaining amount of the originally agreed upon suspended time.

---

[20] (...continued)
violated the conditions of probation, and that shouldn't be a reward to them."); Testimony of Anne Carpeneti, Assistant Att'y Gen. at 1:37:13-1:47:50, Hearing on S.B. 210 Before the H. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 11, 2012) ("[W]hen the state and the defense enter into plea negotiations, both sides give up some things and gain some things . . . in exchange for a particular agreement. . . . The parties bargained on this period of probation. The court accepted that . . . bargain . . . and the defendant has violated [it]. In terms of the agreement that was originally made, that [should] be upheld."); Testimony of Douglas Moody, Deputy Dir., Pub. Def. Agency at 2:13:00-2:36:30, Hearing on S.B. 186 Before the Sen. Judiciary Comm., 27th Leg., 2d Sess. (Apr. 11, 2012) ("Most of these sentences are negotiated and what happens is the state gives up something and the defense gives up something.").

[21] *Ray v. State*, 452 P.3d 688, 700 (Alaska App. 2019) (Suddock, J., writing separately) (emphasis in original).

[22] This includes increasing the period of probation as the superior court did here. *See id.* at 690; Opinion at 3.